DRAINAGE DISTRICT No. 1 REFORMED, OF STODDARD COUNTY, MISSOURI, a Public Corporation, and R. M. STEVENSON, ALVA WALKER, C. A. QUINN, G. C. CROW, J. H. BEACHUM, M. O. FULLBRIGHT, L. M. HEIGLE, JOHN D. YOUNG, A. S. JOHNSON, L. E. BOYLE, CARMEN CREWS, ELMER STONE, LOUIE L. HIGGINBOTHAM, EARL LIVINGSTON, ELMER KINCADE, ROY HUFFORD, HERBERT KINKADE, H. R. SWAFFORD, RUBEN WHITE, B. C. ELLIS, M. C. SHELBY. LEE HARMAN, C. E. BURNER, SAM KELLER, V. C. BLACKMAN, H. J. WISHON, ANDIE BAKER, JESSE MURPHY, OREA OLIVER, J. W. CLAYTON, DENNIS HARRINGTON, EVERETT ORR, GLEN MALDEN, G. C. CREWS, T. M. RICE, WOOD TAYLOR, W. F. SMITH, GOLDIE QUINN, W. M. HEIGLE, MARVIN HOWARD, W. J. BLOCK, A. MASSINGILL, J. R. EDWARDS, W. E. RUSSELL, JOE WARD, MRS. AURA E. PUTNAM, J. H. COOPER, and DESSIE M. GRAY, Appellants, v. JONAS (JACK) MATTHEWS, Treasurer and Ex-Officio Collector of Stoddard County, Missouri: THE BANK OF ADVANCE, a Corporation: LEO A. FISHER, JR.; WILLIAM RINGER; R. KIP BRINEY; YEWELL LAWRENCE; PEARL LAWRENCE; C. S. PRATHER; JOHN CROSSER; and E. E. GOOD, Respondents, No. 41649—234 S. W. (2d) 567.

Division One, November 13, 1950.

Rehearing Denied, December 11, 1950.

C. A. Powell for appellants.

292

*M. Walker Cooper* and *Joe Welborn* for respondents.

296

[569] CONKLING, P. J.—Plaintiffs (a Drainage District and certain landowners and taxpayers therein) appealed from the order of the circuit court of Stoddard County sustaining the defendants' motion to dismiss the second amended petition filed by plaintiffs, and entering judgment for defendants, in an action wherein plaintiffs sought to enjoin the payment of sixty-six certain drainage district maintenance warrants drawn and issued by the county court of Stoddard County in 1936 and 1937 in the total amount of $17,303.20. In the petition plaintiffs also sought judgment against defendants for $16,145.72 alleged to have been wrongfully paid defendants on certain other maintenance warrants of said drainage district.

It appears from the petition before us that the appellant-plaintiff Drainage District No. 1 Reformed of Stoddard County, Missouri (hereinafter referred to as the District) was organized in 1910 by the County Court of Stoddard County, pursuant to what is now Article 3 of Chapter 79 of R. S. Mo. 1939, Mo. R. S. A.; that in June, 1936, upon petition of seventy-two landowners in the district to the county court, that such court have the drainage ditches in said district cleaned out and redredged to their original capacity, the county court, as the governing body of said drainage district, contracted with one William Crumpecker to do such work, and, by contract, employed a civil engineer to supervise such recleaning and redredging; that thereafter in the years 1936 and 1937, the county court issued the warrants in question here (and others) to Crum-

pecker, drawn on the maintenance fund of said District for such recleaning and redredging, in the total amount of $40,710.89; and that all of those warrants have been paid except the $17,303.20 face amount thereof sought in this action to be repudiated. The warrants drew 6% interest from date of issuance. From 1936 to 1948, inclusive, the county court levied a maintenance tax on the land in the district, which has been largely used to pay the warrants issued to Crumpecker.

It further appears that the Bank of Advance, Stoddard County, Missouri, on November 15, 1941, filed its petition (Case No. 14740) in the Circuit Court of Stoddard County in 84 Counts (each count upon a separate warrant) seeking judgment upon the then unpaid warrants issued originally to Crumpecker for doing the above mentioned recleaning and redredging. The defendants in that action were the plaintiff-appellant Drainage District No. 1 Reformed of Stoddard County, Missouri, and the then three members of the county court of Stoddard County. The 66 warrants involved in the instant case (representing a total face value of $17,303.20) with the exceptions of warrants numbered 11039, 10704 and 11397 (which latter three totalled only $616.12), were included in those sued upon by the Bank of Advance in 1941. All the other warrants sued upon in the case by the Bank of Advance have since been paid.

It further appears that in the above mentioned suit by the Bank of Advance (hereinafter sometimes referred to as Case [570] No. 14740) it was alleged in each count thereof that the county court, as the governing body of the drainage district, "had lawfully entered into a contract with Wm. Crumpecker for the redredging and recleaning of the drainage ditches of the defendant Drainage District and that * * * the said Wm. Crumpecker * * * did fully and completely perform all the terms, agreements and conditions of said contract * * * that * * * the defendant Drainage District No. 1 Reformed * * * was lawfully indebted to the said Wm. Crumpecker * * * for excavation work done in pursuance to said contract, and that the County Court * * * found and adjudged that the defendant Drainage District owed and was lawfully indebted to the said Wm. Crumpecker for work done in pursuance to said contract (in the amount of each warrant sued on in each count and the county court ordered that a Maintenance Warrant be drawn on the County Treasurer in the proper sum) in proper form payable out of any money in the treasury appropriated for Drainage District No. 1 Reformed Maintenance, be issued and signed, (etc.) * * * that said warrant was so issued and signed * * * and attested * * * and that said warrant was lawfully issued on said debts in favor of the said Wm. Crumpecker * * * to bear interest * * * at the rate of six per cent per annum until paid; that thereafter for valuable consideration * * * the said Wm. Crumpecker assigned and sold said warrant to this plaintiff (Bank of Advance); that the

plaintiff is the legal holder and owner of said warrant; that demand has been made upon the Treasurer of Stoddard County for the payment of said warrant; that payment was refused by said Treasurer for the reason that there was no money in the treasury for the purpose of paying said warrant," etc.;

It also further appears from the judgment in that case: that defendants in Case No. 14740 were "duly notified by personal service of summons by the Sheriff of Stoddard County, Missouri, * * * notifying them to appear, answer and plead"; that no defendant filed any pleading in the case or appeared therein; that on December 19, 1941, the plaintiff bank (of Advance) secured a default judgment in the cause in the total sum of $34,945.93; that in said judgment the court found defendants failed to appear "within the time required by law * * * and being now three times solemnly called, come not but make default;" that plaintiff submitted its cause to the court for hearing and "the court doth find that plaintiff is entitled to recover (upon said warrants) * * * $34,945.93 * * * together with interest on said amount in the sum of 6% per annum from date of this judgment until paid," etc.;

The instant petition further *alleges* that the defendants in Case No. 14740 relied upon the allegations of the petition in that case, were misled thereby, believed them true and "made default in said cause," but, that if defendants in Case No. 14740 had known certain matters (in the instant petition *alleged* to have existed) "said defendants (in case No. 14740) could and would have pleaded as a defense" said certain matters "which said plea would have been a good and lawful defense to said cause of action," in case No. 14740. It is also alleged that the instant individual plaintiffs are landowners within the district and as such are obligated to pay such maintenance taxes as are lawfully levied; and that the instant individual defendants (other than Jonas (Jack) Matthews, Treasurer and Ex-officio Collector of Stoddard County) hold and claim to own the warrants instantly in issue.

The instant petition further alleges that certain of the instant defendants have collected principal and interest on the judgment and warrants in question in the total amount of $16,345.72, and prays a decree (1) enjoining the defendant Treasurer and Ex-officio Collector of the county, and all his successors in office from paying any and all of the warrants as to either principal or interest, (2) enjoining defendants or any of them from collecting or attempting to collect upon the above judgment or warrants, (3) declaring the judgment (in case No. 14740) and the warrants void, (4) requiring the production of the warrants for cancellation, (5) that if the warrants are valid, the interest heretofore paid [571] thereon be offset, and (6) finding that defendants are indebted to the drainage district in the sum of $16,145.72.

The proceedings in the county court of Stoddard County, the said warrants issued by that court, and the judgment of the circuit court of that county in case No. 14740 are attacked and sought to be declared void on many grounds. Plaintiffs' contentions may be compressed, classified and stated as follows: The warrants are attacked, it being alleged (1) there was no proper endorsement and assignment by Crumpecker, (2) no presentment of the warrants for payment to the county treasurer, and (3) no certification by the county treasurer that there were no funds to pay them. The county court proceedings are attacked, it being alleged that (1) the county court had no authority to proceed except under R. S. Mo. 1939, Secs. 12435 and 12436, and that the court did not comply with the procedural provisions of those sections as to the engineer's report, notice, hearing, division of costs, etc., and that the maintenance tax levy made by the county court was therefore illegal, and (2) the county court had no authority to issue said warrants with an interest bearing provision. The judgment obtained by the Bank of Advance in Case No. 14740 is attacked, it being alleged that (1) the Bank did not own the warrants and therefore had no right to bring suit or have judgment, and (2) the Bank's petition in that case contained untrue allegations of fact.

The petition before us contains many forced and unallowable conclusions of the pleader which are sought to be drawn from matters stated as facts, and many conclusions of law sought to be drawn from certain statutes cited. But the defendants' motion to dismiss admits only the material facts that are well pleaded; the motion does not admit the pleaders' conclusions of law nor his forced conclusions from the facts. Therrien v. Mercantile-Commerce Bank & Trust Co., 360 Mo. 1002, 277 S. W. (2d) 708, Bernhardt v. Long, 357 Mo. 427, 209 S. W. (2d) 112.

In R. S. Mo. 1939, Sec. 12433, Mo. R. S. A., the General Assembly imposed the duty and delegated to the county court the power "to maintain the efficiency" of county court drainage districts. Those courts are there "vested with the continuous management and control of said districts with the duty and power of *maintaining, preserving, restoring,* repairing, strengthening and replacing the drains, ditches and levees thereof." Under the power granted and the duty delegated in that section to "maintain the efficiency" of the district it was the county court's duty "to clean out and redredge the ditches in said district to their original capacity" without petition or suggestion by any of the landowners in the district. In contracting for the work done by the contractor in this case, i. e., "to clean out and redredge the ditches * * * to their original capacity" we rule that the county court could proceed under the power given it in Section 12433.

Section 12434 gives the county court the power to levy a "maintenance tax" upon each tract of land within the district

"to *maintain*, reserve, *restore*, repair, strengthen and replace the drains, ditches, levees and óther works of the district for whose benefit such tax is levied." Only by the levy of the maintenance tax could the work of cleaning and redredging have been paid for. The county court has the statutory authority to levy the tax and to issue warrants drawn upon the maintenance funds of the district to pay for such work.

The petition alleges no fraud of the 1936 county court or by Crumpecker, the contractor, and the authority granted the county court of necessity "implies the right to incur the liability to pay for the work." Graves v. Little Tarkio Drainage Dist. No. 1, 345 Mo. 557, 134 S. W. (2d) 70, 78. There is no charge of fraud, no allegation of bad faith and no claim that the county court did not use its best judgment. The work was done in 1936, the warrants were reduced to judgment in 1941 but this action was not begun until 1949.

These main questions are thus presented for our ruling, (1) are plaintiffs' attacks [572] upon the county court proceedings and upon the warrants issued by that court foreclosed by the final judgment secured in 1941 against the District by the Bank óf Advance in case No. 14740, and (2) may that judgment be now set aside and held void in this proceeding. It is seen from the above that the grounds upon which the warrants are attacked are clearly alleged in the petition filed by the Bank of Advance in case No. 14740, in which case the Bank had judgment. We have above ruled that the statute (Sec. 12433) gave the county court the power to contract with Crumpecker for the work which Crumpecker did and for which these warrants were issued. Crumpecker's work involved only the cleaning out and redredging of the ditches to their original capacity, that the efficiency of the drainage district might be thus maintained. At no place in the petition does it appear that Crumpecker's work involved or included any enlargement of the drainage system, any new work or any such improvement as is contemplated by Sections 12435 and 12436. Neither Section 12433 giving the power and authorizing the "maintaining, preserving and restoring" of the ditches, nor Section 12434 authorizing the levying of a maintenance tax for those purposes restricts or limits the amount of maintenance work that may be done in any one year to the amount that can be paid for out of the maintenance tax which can be levied for any one year.

As to the question of the warrants containing an unauthorized provision for interest, we not only find no provision in Article 3, of Chapter 79 forbidding the county court to contract to pay interest on such warrants (such as the provision found in Mo. R. S. A. § 10366, forbidding the payment of interest on school warrants) but it may be observed that upon receipt of each such warrant the contractor could present it to the county treasurer for payment and

thereby start the accrual of interest. Or the contractor could file suit upon each warrant as received and obtain interest upon his judgment. Mo. R. S. A. § 12474 and § 13833, and Pullum v. Consolidated School Dist. No. 5, 357 Mo. 858, 211 S. W. (2d) 30. In any event the petition of the Bank of Advance alleged in each count as to each of the 84 warrants there sued on, "that said warrant was to bear interest from the date of its issuance at the rate of six per cent (6%), per annum until paid", and the prayer in each count of that petition prayed judgment for such interest.

This brings us to a consideration of whether the matters specifically pleaded in the petition of the Bank of Advance in case No. 14740 are foreclosed by the judgment in that case. Can the questions raised by the issues tendered by the affirmative fact allegations of that petition, be again raised in this case, or were such questions forever foreclosed by the judgment in Case No. 14740?

In 31 C. J. S. Estoppel, § 9, p. 195, it is stated: "The rule of estoppel by record bars a second action between the same parties on an issue necessarily raised and decided in the first action; so, an issue of ownership of property and its incidents thus adjudicated cannot be relitigated in the second action between the same parties. It has been held that the rule prevents a party not only from litigating again what was actually litigated in the former case, but also from litigating what might have been litigated therein." In 30 Am. Jur. Judgments, § 178, p. 920, et seq., that rule is stated in these words: "It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different [573] purposes, and seek different relief." See also, McIntosh v. Foulke, 360 Mo. 481, 228 S. W. (2d) 757, 761, Norwood v. Norwood, 353 Mo. 548, 183 S. W. (2d) 118, Hall v. Wilder Mfg. Co., 316 Mo. 812, 293 S. W. 760, Powell v. City of Joplin, 335 Mo. 562, 73 S. W. (2d) 408, Healy v. Moore, (Mo. App.) 100 S. W. (2d) 601, Maddocks v. Gushee, (Me.) 113 Atl. 300, and annotation 128 A. L. R. 472, et seq.

Applying that rule to the facts here the contention of plaintiffs as to the claimed infirmities of the warrants, their contentions as to the invalidity of the county court proceedings, and their contentions

that the Bank of Advance did not own the warrants cannot be reopened or relitigated in this case. The District had full opportunity to litigate those matters in the Bank of Advance case. It cannot be now heard to complain of its own failure to do so. If the Bank's petition in that case contained untrue allegations of fact, that time and case (No. 14740) presented the appointed time, case and forum in which to deny and contest those alleged facts. Having failed to there do so the opportunity is no longer available. There must be a sometime end to litigation.

■ May plaintiffs now in this action in equity make collateral attack upon the judgment obtained upon the warrants by the Bank of Advance? We hold they may not. It is not here contended by the plaintiffs that in the Bank of Advance case, the court did not have jurisdiction of all the parties and of the subject matter of that action. Equity will not interfere with or hold void a judgment at law unless there was fraud in the procurement of the judgment extrinsic to the matters upon which the judgment was rendered. Winchell v. Gaskill, 354 Mo. 593, 190 S. W. (2d) 266, Wolf v. Brooks, (Mo. Sup.) 177 S. W. 377, 31 Am. Jur. Judgments, § 654, p. 230, et seq. Intrinsic fraud, which pertains merely to an issue involved in the action in which the judgment was obtained, is not sufficient to afford equitable relief. It is not contended and not alleged that there was any fraud practiced in the very act of obtaining that judgment. It is only contended that if the District had known certain matters about the warrants, and the proceedings leading up to their issuance, that it would have made a defense in the Bank of Advance case. But it did not do so. And no reason at all appears here why the judgment in the Bank's case should now be held void.

■ One other question remains for our ruling. It is finally contended by the plaintiffs that since the individual plaintiffs are landowners and taxpayers in the District they may enjoin a claimed illegal disposition of the District's maintenance funds; that, although the individual plaintiffs have paid maintenance taxes in the District, their delay in bringing this action does not constitute laches, and that, in any event, they are not bound by the judgment in the Bank of Advance case. On the contrary defendants contend that the individual plaintiffs, although concededly not parties to the Bank of Advance case, are, with the District, estopped, and that the judgment in case No. 14740 is res judicata as to all residents and taxpayers of the District. We agree with the contention of defendants.

In a similar case, where the question arose in a similar way, this court considered the identical contention at length, and, in a well-considered and soundly reasoned opinion (Powell v. City of Joplin, supra) said: "In the absence of fraud or collusion a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district, or a board

or officers properly representing it, is binding and conclusive on all residents, citizens and taxpayers in respect to matters adjudicated which are of general or public interest such as questions relating to public property, contracts or other obligations. The rule is frequently applied to judgments rendered in an action between certain residents or taxpayers and a municipality, county or district or board or officer representing it, it being held that all other citizens and taxpayers similarly situated are represented in the litigation and bound by the judgment in the absence of [574] fraud or collusion. The rule is applicable to persons who have notice of the suit and even to persons without actual notice of the suit.''. And see also, State ex rel. Wilson v. Rainey, 74 Mo. 229, Clark v. Wolf, 29 Iowa 197, Harmon v. Auditor of Public Accounts, 123 Ill. 122, 13 N. E. 161, Rollins v. Board of Drainage Commissioners of McCracken Co. for Mayfield Drainage Dist. No. 1, et al., 281 Ky. 771, 136 S. W. (2d) 1094, Kersh Lake Drainage District v. Johnson, 203 Ark. 315, 157 S. W. (2d) 39, cert. den. 86 L. Ed. 1748. In State ex rel. Wilson v. Rainey, supra, we said (l. c. 235) : ''* * * a judgment against a county or its legal representatives, in a matter of general interest to all the people thereof, as one respecting the levy and collection of a tax, is binding not only on the official representatives of the county named in the proceeding as defendants, but upon all the citizens thereof though not made parties defendant by name. This we think is so both on principle and authority, for in suits of the character mentioned the legally constituted representatives of the county stand in the place of each citizen of the county who is liable to be called on as a tax-payer to contribute his proper proportion to liquidate the demand which a judgment may establish.''

The rule just above stated is founded upon basic concepts of privity and virtual representation. The doctrine of virtual representation, well recognized in equity, is based upon considerations of necessity and paramount convenience and may be invoked to prevent a failure of justice. Brown v. Bibb, 356 Mo. 148, 201 S. W. (2d) 370, 374. The doctrine is applicable if (as here) the interest of the represented and the representative are so identical that the inducement and desire to protect the common interest may be assumed to be the same in each and if there can be no adversity of interest between them. The rule of Powell v. City of Joplin, supra, is not opposed to the fundamental principle that a stranger to a cause and to its subject matter is not bound by a judgment as to which he had no opportunity to be heard. But in the instant circumstances under the applicable principles and the broad policy of the law to bring litigation to an end the res judicata rule must be applied. And under the principles of that rule ''privity'' depends more upon the relation of the parties to the subject matter than upon their connection as parties with or any activity in the former litigation. Generally

304

speaking, privies are those legally represented at the trial. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity of interest is found to exist, all are alike concluded and bound by the judgment. Cases cited in preceding paragraph, and 30 Am. Jur. Judgments, § 225, Taylor v. Sartorius, 130 Mo. App. 23, 108 S. W. 1089, 1094, Perkins v. Goddin, 111 Mo. App. 429, 85 S. W. 936, Wors v. Tarlton, 234 Mo. App. 1173, 95 S. W. (2d) 1199, 1207. Plaintiffs' final contention must be denied.

The order of the circuit court in sustaining defendants' motion to dismiss the petition of plaintiffs and in entering judgment for defendants is affirmed. It is so ordered. All concur.