**Robert C. REIS, Administrator ad litem of the estate of Louis LaPresto, deceased, Appellant,**

v.

**Margherita LA PRESTO, Frank L. La Presto and Charles LaPresto, Respondents.**

No. 46648.

Supreme Court of Missouri,

Division No. 2.

May 11, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied June 8, 1959.

Richard C. Warmann, St. Louis, Attorney for Appellant.

Robert W. Herr, St. Louis, Attorney for Respondent Margherita LaPresto.

Jesse E. Bishop, St. Louis, Attorney for Respondents Frank L. LaPresto and Charles LaPresto.

STOCKARD, Commissioner.

Louis LaPresto appealed from the judgment of the Circuit Court of the City of St. Louis dismissing his petition in equity to set aside a default judgment in favor of Margherita LaPresto in the amount of $15,000, and also to set aside the sale of two tracts of land sold pursuant to an execution based on the said judgment. Jurisdiction of this appeal is in this court because of the amount in dispute and also because title to real estate is involved.

Subsequent to the submission of this appeal the suggestion has been filed in this court of the death of Louis LaPresto, plaintiff-appellant, and the appointment of Robert C. Reis as administrator ad litem of the estate of Louis LaPresto. We shall subsequently use the term "plaintiff" as referring both to Louis LaPresto and to the administrator ad litem.

A short statement of the history of this litigation will be helpful. In 1953 Margherita LaPresto obtained a default judgment in the amount of $15,000 against her husband Louis LaPresto for separate maintenance. He was personally served with summons, but he filed no answer and no attorney appeared in his behalf. After the entry of the default judgment he filed no motion for new trial and he took no appeal. Execution was issued and certain real estate was levied upon by the sheriff and advertised for sale. A motion to quash the execution was overruled and upon appeal to this court that action was affirmed. LaPresto v. LaPresto, Mo.Sup., 285 S.W. 2d 568.

Plaintiff brought the present suit in equity against his wife Margherita and his two sons Frank and Charles. The petition is lengthy, but in substance it challenges the default judgment on two grounds. The first, which we shall designate as Part I, is that the judgment is void because of matters affirmatively shown of record, and the second, which we shall designate as Part II, is that the judgment should be set aside because of fraud in its procurement.

After alleging the circumstances of the entry of the default judgment as above set out, including the fact that he was personally served but filed no pleadings and did not employ counsel, plaintiff alleged that his wife was "wholly incapable of comprehending the nature and complexities of any commercial or legal matters," and that after Frank was admitted to practice law she has "at all times blindly done whatever was requested of her" by him, and that Frank became the "dominant factor in plaintiff's home;" that Frank quarreled with plaintiff over "insignificant things and minor matters" with the intent to create dissension in plaintiff's home, and he succeeded in taking plaintiff's wife out of his home and "thereby brought about the separation of plaintiff and his wife." Plaintiff then alleged what we shall designate as Part I of his petition, or that the default judgment "is unjust, unconscionable, inequitable, illegal and void and of no legal effect" because (a) equity and good conscience demanded that plaintiff be notified of the hearing in the suit for separate maintenance and the court had no right to hear the cause in his absence and without notice to him of the setting of the hearing when the record disclosed and the court knew that he was not represented by counsel and when an undisposed of motion was pending and nine months had elapsed since he had been served with the summons; (b) the default judgment was entered when the cause was not at issue because a motion of his wife for temporary alimony, suit money and attorney fees was pending; (c) the court had no jurisdiction to award a lump sum for separate maintenance against a defendant in default in the absence of an agreement of the parties or in the absence of some particularly unusual or extenuating circumstances, neither of which existed; (d) the lump sum of $15,000 was greater and other than that demanded in the petition; and (e) even if the judgment was "substantively permissible" the evidence introduced as to plaintiff's financial worth, if true, "wholly

failed to support a judgment for such a large sum."

It is to be noted that as to the above allegations, which we have designated as Part I, there are no allegations that the defendants in this suit were guilty of any fraud, and there are no allegations from which fraud on their part can be inferred. In other words, with the exception subsequently noted, Part I of the petition is based on the contention that the judgment is void because of matters appearing of record which if meritorious would make it subject to a collateral attack as well as a direct attack. The exception is the last contention that the amount of the judgment was not supported by the evidence.

Plaintiff then alleged what we shall designate as Part II of his petition, or that the default judgment and the sale of his property under execution were obtained by collusion, concealment, artifice, fraud and deceit on the part of his wife and son Frank, and in support thereof he alleged that (a) (1) Frank caused plaintiff's wife to abandon and leave plaintiff without just cause or reason and he prevented a reconciliation; (2) Frank knew plaintiff owned real estate but had taken title in the names of "nominees or straw parties" and he "did secretly procure deeds to such property with the intent of depriving plaintiff thereof;" (3) when plaintiff was hospitalized Frank caused plaintiff's wife "to visit him and request him to sign over, by will or otherwise plaintiff's property" (there is no allegation that any property was transferred by reason of this request); (4) Frank caused plaintiff's wife to make unreasonable financial demands upon plaintiff and to institute the suit for separate maintenance, and he procured legal counsel for her; (5) while plaintiff was negotiating for a settlement and reconciliation Frank "did cause a default against this plaintiff and thereafter did instigate and cause a default judgment to be entered against this plaintiff in said separate maintenance action" for the gross sum of $15,-000; (6) Frank thereafter caused plain-

tiff's property to be sold upon execution and he instructed his wife's counsel to bid the property in "at exhorbitantly low prices;" and (7) all of the above was done by his wife and Frank "wilfully, maliciously, collusively and fraudulently and deceitfully" with the intent of harming plaintiff, "not only physically, emotionally and socially, but particularly financially;" (b) the default judgment was obtained without notice to or knowledge of plaintiff after he had been in default about eight months while negotiations for a reconciliation and settlement were going on between plaintiff and his wife and when his wife and Frank knew he was not represented by counsel and when the cause was not at issue because of the undisposed motion referred to in Part I (b) (there are no allegations that by reason of any fraudulent representation of his wife or Frank upon which he relied he was deceived into believing that no default would be taken or that no answer was necessary); (c) The default judgment was obtained without notice "that relief other than as prayed" was being sought and he did not learn from the negotiations or otherwise that a "lump sum in gross award" would be requested and he was thereby misled and his property was taken without due process of law; (d) that the default judgment was based on false testimony of Frank that $225 to $250 per month was required for his wife to live and that he had supported her since 1945 when in truth and fact all of the children had been contributing to her support; (e) Frank knowingly testified falsely that plaintiff was worth $75,000 when in fact he owned only the properties subsequently sold by execution, and Frank also testified falsely concerning plaintiff's business activities and monthly income, and "to render such a judgment for an exhorbitant amount * * * was completely out of proportion to plaintiff's worth * * * [and] was unreasonable and unconscionable;" (f) his wife and Frank knowingly testified falsely that plaintiff "physically threw" his wife out of their home and refused a reconciliation when in truth and fact he kept his house ready in the hope that his wife would "eventually throw off the domination and control" of Frank and "realize her mistake" and return to him, and that by reason thereof he had a good and meritorious defense to the separate maintenance action; and (g) he has exhausted all his remedies at law and the aforesaid action of his wife and Frank constitute attempts "to deprive this plaintiff of his meager income from his * * * used furniture store * * * and his cubby hole living quarters," and that unless the judgment and the sales of his property under execution be set aside he will be permanently and irreparably damaged.

The trial court sustained motions to dismiss the petition for the reason that the allegations of fact were "insufficient to constitute a cause of action in law or in equity and for the further reason that the matters complained of are by the allegations of the petition res judicata."

The defense of res judicata was properly raised by a motion to dismiss. Section 509.290 RSMo 1949, V.A.M.S.; Hamilton v. Linn, 355 Mo. 1178, 200 S.W. 2d 69 [5]; Agnew v. Union Const. Co., Mo.Sup., 291 S.W.2d 106 [1]. The res judicata feature of the motion has reference to the previous appeal to this court from the order dismissing plaintiff's motion to quash the execution. Plaintiff does not contend that the trial court, or that we, cannot take judicial notice of the decision in LaPresto v. LaPresto, supra, but he contends that the decision in the previous appeal is not res judicata because the motion to quash constituted a collateral attack on the default judgment and the petition in this case constitutes "a direct equitable attack on the judgment for fraud in its procurement."

"A former adjudication on the same cause of action between the same parties is conclusive in the second proceeding as to every issue of fact which was or might have been litigated in the first, under what is called estoppel by judgment.

A judgment between the same parties on a different cause of action is binding as to the facts actually decided, and necessarily determined in rendering the judgment, under what is called estoppel by verdict." Abeles v. Wurdack, Mo.Sup., 285 S.W.2d 544, 546 [1–2]. The cause of action here is in equity and Part II of the petition purportedly is directed at fraud in the procurement of the default judgment. A motion to quash an execution, which was the matter under consideration in the previous appeal, does not reach alleged errors or irregularities prior to judgment, Vorhauer v. Sweeney, Mo.App., 217 S.W.2d 985 [5]; McDougal v. McDougal, Mo.App., 279 S.W.2d 731 [32], and will lie only where the record affirmatively discloses that the judgment is void, or in certain other limited situations where the right to execution is defeated by matters occurring subsequent to the judgment, Vorhauer v. Sweeney, supra, such as payment of the judgment. State ex rel. Lane v. Montgomery, 223 Mo. App. 492, 17 S.W.2d 586. Therefore, the doctrine of res judicata does not apply to Part II of the petition. But, the order overruling plaintiff's motion to quash the execution was a complete and final disposition of the issues therein raised from which an appeal was proper and authorized, and from which plaintiff did appeal. That final order affected substantial rights and was fully litigated, and the matters adjudged therein are res judicata and binding on the parties in all subsequent proceedings. Noll v. Noll, Mo.App., 286 S.W.2d 58 [2]; 60 C.J.S. Motions and Orders § 65. As previously stated, Part I of the petition does not seek to have the default judgment set aside because of fraud in its procurement or, with the exception previously noted, for any reason other than that the judgment is void because of the alleged deficiencies appearing of record. In the appeal from the order overruling the motion to quash the execution, whether or not the default judgment was void because of matters appearing of record was the precise issue for determination.

■ Plaintiff contends on this appeal that "the present action is a direct equitable attack on the judgment for fraud in its procurement," and it might be contended that he has abandoned the allegations in what we have designated as Part I of the petition. But, if he has not, we conclude that the trial court correctly ruled that the judgment in the previous appeal reported at LaPresto v. LaPresto, Mo., 285 S.W.2d 568, is res judicata as to the issue of whether the default judgment was void because of matters affirmatively appearing of record. The addition of Frank and Charles LaPresto as defendants in this action does not affect this result because one who has had his day in court may not reopen the identical issues by merely adding new parties who are unnecessary to the determination of those issues. Chapman v. Pollock, D.C., 148 F.Supp. 769.

■ We turn to the question of whether the allegations in Part II are sufficient to entitle plaintiff to have the default judgment set aside because of fraud in its procurement. In making this determination we must treat as true the material facts well pleaded in the petition, State ex rel. Public Water Supply Dist. No. 7 of Jackson County v. James, 361 Mo. 814, 237 S.W.2d 113 [1], but this rule is limited to the ultimate constitutive facts and not to legal conclusions of the pleader nor to evidential or mere probative facts. Drainage Dist. No. 1, Reformed, of Stoddard County v. Matthews, 361 Mo. 286, 234 S.W.2d 567 [1].

■ "The rule is well settled that a court of equity will not interfere with a judgment at law unless there was fraud in the procurement of the judgment extrinsic or collateral to the matters tried upon which the judgment was rendered." Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284, 287 [1], 162 A.L.R. 437. "A judgment cannot be set aside on the ground of fraud unless it is shown that fraud was practiced in the very act of obtaining the judgment;

that the fraud went to the manner in which the judgment was procured rather than operating upon matters pertaining to the judgment itself; that the fraud prevented the unsuccessful party from presenting his case or defense; or that the fraud otherwise went to extrinsic, collateral acts or matters not before the court for examination or determination in the suit or proceeding in which the judgment was rendered. * * * Such a proceeding cannot be used to obtain a further hearing upon matters, which were or could have been brought before the court to make a case or defense, either because the parties found further evidence bearing upon the truth or falsity of the testimony there, or because the parties neglected to litigate such matters in the original case. 'Courts of equity do not grant such relief for the purpose of giving the defeated party a second opportunity to be heard on the merits of case.'" Hockenberry v. Cooper County State Bank of Bunceton, 338 Mo. 31, 88 S.W.2d 1031, 1036 [2, 3].

█ Plaintiff's allegations to the effect that Frank wrongfully caused plaintiff's wife to leave him pertain to matters which might have constituted a defense to the suit for separate maintenance on the ground that his wife abandoned him without just cause. As stated above, a party is not entitled to have a court of equity set aside a judgment "because the parties neglected to litigate such matters in the original case." Hockenberry v. Cooper County State Bank of Bunceton, supra [3]; Winchell v. Gaskill, 354 Mo. 593, 190 S.W.2d 266 [6].

The allegations that Frank caused his mother to institute the suit for separate maintenance and that he advised and counseled with her do not show any fraud in the procurement of the judgment. As her son, and as an attorney, Frank had the right to advise his mother, and whether his advice concerning her right to separate maintenance was sound would have been determined at the trial on the merits of that suit.

The petition does not seek to set aside the title to any property which Frank allegedly "procured" from "nominees or straw parties" who held title for plaintiff, and that allegation adds nothing to a petition to set aside a judgment for separate maintenance in favor of Frank's mother because of fraud in its procurement. The same result is equally true as to the allegation that at Frank's suggestion his mother, apparently without success, requested plaintiff to convey property to her by will or deed.

The allegations that Frank caused plaintiff's property to be sold upon execution and "instructed" counsel to bid the property in at a low price pertain to matters which occurred subsequent to the entry of the judgment, and assuming that by reason thereof plaintiff could challenge the validity of the execution sales, these facts, even if true, would not constitute a meritorious attack against the validity of the judgment

█ The allegations to the effect that the default judgment was obtained while negotiations for a settlement were in progress with no notice to plaintiff that this was to be done presents a somewhat different situation. Fraud that goes "to the manner in which the judgment was procured" and which "prevented the unsuccessful party from presenting his case or defense" may be sufficient to justify a court of equity to set aside a judgment so procured. Hockenberry v. Cooper County State Bank of Bunceton, supra, 88 S.W.2d at page 1036; Winchell v. Gaskill, supra, 190 S.W.2d at page 272. False representations by a party to his adversary that he need not file any pleading while they negotiate for a settlement could support an action in equity to set aside a judgment obtained without notice and in violation of those representations. But, when no such representations were made either in fact or by implication, then it is the defendant's responsibility to look after his litigation, and if he negligently fails to do

so he is in no position to seek equitable relief from the courts. Mutual Casualty Co. of Missouri v. Sansone, Mo.App., 17 S.W. 2d 558 [2]. One who has been served personally with a summons must use diligence to prevent a default judgment against him, Duncan v. Gibson, 45 Mo. 352, and he has less excuse to cry fraud than one who has been served with substituted service or by publication. Brasker v. Cirese, Mo.Sup., 269 S.W.2d 62, 67; Fadler v. Gabbert, 333 Mo. 851, 63 S.W.2d 121, 131 [3]. It appears upon reading the petition that a studied effort was made not to allege facts that the defendants made any representations to plaintiff, upon which he relied, that he need not file any pleadings or that even though he was in default for approximately eight months no default judgment would be taken against him. There are no allegations from which it could be inferred that defendants did anything which induced plaintiff to become or remain in default or which caused or resulted in the trial court entering the judgment against him when it would not have done so if plaintiff had been personally present before the court at the time. As a general rule, "There is no fraud in doing a lawful act," State ex rel. Orr v. Buder, 308 Mo. 237, 271 S.W. 508, 512 [6], 39 A.L.R. 1199, particularly when there is no concealment of the act. Plaintiff has alleged nothing more than that he was in default and that with no additional notice after he was personally served with summons, the default judgment was rendered against him. This is not sufficient to set aside that judgment.

The petition also contains allegations to the effect that the trial court entered an improper judgment, that is, for an amount in gross instead of monthly payments; that it entered judgment while an undisposed of motion was pending; and as alleged in Part I, that the evidence did not support a judgment in the amount rendered. Reference is made to the opinion in the previous appeal to the discussion there and the ruling that these contentions are without merit. These are matters which should have been presented on appeal. They do not render the judgment void.

■ The remainder of the allegations are to the effect that false testimony was given concerning plaintiff's treatment of his wife and concerning his financial worth. It has uniformly been held that false testimony pertaining to any fact in issue on the merits of the cause of action and to which the other party has an opportunity to make a defense does not afford equitable grounds for setting aside a judgment. Crane v. Deacon, Mo.Sup., 253 S. W. 1068 [2]; Winchell v. Gaskill, supra [4]; Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284 [2], 162 A.L.R. 437. The facts alleged here could not possibly bring this case within the exception to the above general rule as set forth in Sutter v. Easterly, supra.

■ After the trial court dismissed plaintiff's petition, he offered to amend it by inserting in that part pertaining to the fact that the judgment in the separate maintenance suit was for the sum of $15,-000 instead of a fixed sum each month, an allegation to the effect that the first he knew of "defendant's fraudulent intention" to obtain a "lump sum separate maintenance award" was "after the hearing had been concluded and the case taken under advisement." This offer to amend was refused. Whether it was error to so refuse in view of our liberal rules pertaining to amendments is immaterial because this allegation, if incorporated into the petition, would establish that plaintiff actually knew of this feature of the proposed judgment before it was made and entered and when he had time to go before the trial court and protest if he desired.

The allegations in the petition that the various acts of defendants were fraudulently done are mere conclusions of law and add nothing to the sufficiency of the petition. Weitzman v. Weitzman, Mo. Sup., 156 S.W.2d 906 [3]; Bernhardt v. Long, 357 Mo. 427, 209 S.W.2d 112 [4]. The only contention that the sales under

execution of plaintiff's land were void is based on the proposition that the default judgment upon which the executions were issued was void, and we conclude that the petition does not allege facts which, if true, would authorize a court of equity to set aside that judgment.

For the reasons above stated we conclude that the judgment of the trial court dismissing the petition should be and is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.