

# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. GENERAL CREDIT )     *Opinion issued April 2, 2019*
ACCEPTANCE COMPANY, LLC, )
                         )
         Relator, )
                         )
v.                          )     No. SC97175
                         )
THE HONORABLE DAVID L. )
VINCENT III, )
                         )
         Respondent. )

## ORIGINAL PROCEEDING IN PROHIBITION

General Credit Acceptance Company, LLC, (GCAC) filed a petition for a writ of prohibition barring the circuit court from taking any further action other than vacating the order granting class certification in whole or in part. The circuit court abused its discretion by certifying an overly broad class. The circuit court is directed to withdraw its certification of the class as presently defined because it includes large numbers of individual claims precluded by final deficiency judgments or estopped by their failure to disclose the claims in bankruptcy.

Further, the named plaintiff is not typical of the class because she voluntarily surrendered her vehicle and because GCAC has no deficiency judgment against her. Each

class and subclass must have a representative whose claims are typical of the claims of members of that class and subclass. Either the class must be redefined to include only those for whom the named class representative is typical or a new or additional class representative must be named so each class or subclass has a representative whose claims are typical of the claims of the class. The preliminary writ is made permanent.

## Factual and Procedural Background

Helena Weatherspoon defaulted on payments owed to Car Credit Acceptance Company pursuant to a consumer credit contract requiring her to make installment payments. Car Credit sent Weatherspoon notices informing her of the default and how to cure it. Weatherspoon did not cure the default. Car Credit assigned Weatherspoon's credit contract to GCAC. GCAC repossessed the vehicle, but Weatherspoon regained possession.

Weatherspoon defaulted again, and GCAC again notified her of the default and how to cure it. Weatherspoon did not cure the default and voluntarily surrendered her vehicle to GCAC. GCAC mailed a presale notice informing Weatherspoon her vehicle would be sold in compliance with the Missouri Uniform Commercial Code (UCC). GCAC sold the vehicle and mailed Weatherspoon a post-sale notice of her deficiency balance.

Weatherspoon filed the underlying class action "on behalf of all other similarly situated Missouri consumers" alleging GCAC, and its predecessors or successors, violated statutory notice requirements relating to the repossession and disposition of collateral and collected unlawful interest following default and repossession of the collateral.[1]

---

[1] Weatherspoon alleged GCAC violated § 408.554, RSMo 2000, by omitting statutorily required language from its right to cure notice; violated § 408.555, RSMo Supp. 2006, by wrongfully

Weatherspoon alleged the deficient notices caused her and all class members to suffer harm to their credit, character, and general reputation. Weatherspoon requested "damages equal to the amount of any judgment wrongfully obtained by GCAC" and "a mandatory injunction compelling GCAC to return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Plaintiff and the classes." She also requested statutory damages, an injunction preventing GCAC from collecting deficiency judgments from the class, and a declaration that GCAC's form right to cure, presale, and post-sale notices violate Missouri law.

GCAC introduced evidence of statistical sampling showing approximately 87 percent of potential class members' claims against GCAC were resolved by final deficiency judgments or were extinguished in bankruptcy. GCAC argued this evidence showed the proposed class was overbroad because the vast majority of potential class members' claims were resolved in prior judicial proceedings. GCAC has no deficiency judgment against Weatherspoon, and she did not declare bankruptcy.

The circuit court certified two classes and designated Weatherspoon as the sole class representative. The first class included "all persons who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with GCAC, assigned to GCAC or owned by GCAC; whose loan or financing agreement was secured by collateral; and

---

accelerating loan balances and obtaining possession of vehicles without proper notice; violated § 400.9-602, RSMo Supp. 2002, and § 400.9-623, RSMo Supp. 2001, by providing presale notices restricting redemption payments; provided misleading presale notices regarding the timeframe for selling repossessed vehicles; provided inadequate disclosures on post-sale notices; and provided post-sale notices informing consumers they owed a balance including interest in violation of § 408.553, RSMo 2000.

3

who had the possession of their collateral taken by GCAC, voluntarily or involuntarily, from May 12, 2008 to present."  The second class included "all persons from Class 1 who had the possession of their collateral taken by GCAC involuntarily."

GCAC filed a petition for permission to appeal the certification order pursuant to Rule 84.035.  The court of appeals denied the petition.  GCAC filed the underlying petition for a writ of prohibition asserting the circuit court abused its discretion by certifying the class.  This Court issued a preliminary writ of prohibition.

## Standard of Review

This Court has jurisdiction to issue original remedial writs.  Mo. Const. art. V, § 4.1. A writ petition is the appropriate procedure for obtaining review of the court of appeals' denial of a petition for permission to appeal from an order granting class certification.  *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 859-60 (Mo. banc 2008).

Determining whether a claim should proceed as a class action "ultimately rests with the sound discretion of the trial court."  *Id.* at 860 (internal quotation omitted).  The circuit court abuses its discretion "if its order is clearly against the logic of the circumstance, is arbitrary and unreasonable, and indicates a lack of careful consideration."  *Id.* (internal quotation omitted).

## Class Certification

"[T]he underlying question in any class action certification is whether the class action device provides the most efficient and just method to resolve the controversy at hand, all things considered."  *Id.* at 860-61.  Rule 52.08(a) provides all class actions must satisfy the following four elements:

4

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If the Rule 52.08(a) prerequisites are met, a class action may be maintained only if the plaintiff shows the class satisfies one of the three additional standards set forth in Rule 52.08(b). The circuit court determined Weatherspoon's putative class satisfied Rule 52.08(b)(3), which provides certification is proper if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

GCAC asserts the circuit court abused its discretion in certifying the class because individual issues predominate. As to liability, however, the class claims are based on an interpretation of the form UCC notices regarding the right to cure the default and rights to presale and post-sale notice of disposition of the collateral. A central aspect of Weatherspoon's putative class action is a determination of whether GCAC violated any statutory provisions governing its form UCC notices. Claims involving the interpretation of form contracts often present a "classic case for treatment as a class action." *McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) (internal quotation omitted). GCAC has not established the circuit court abused its discretion by concluding common liability issues predominate. This Court expresses no opinion about whether the issue of damages will be suitable for class treatment if a class is certified consistent with this opinion.

5

## Class Definition

When class certification is appropriate, Rule 52.08 presupposes a properly defined class that is ascertainable and not overbroad. *Coca-Cola*, 249 S.W.3d at 861-62. A properly defined class "is necessary to realize both the protections and benefits for which the class action device was created." *Id.* at 861. A class definition encompassing "more than a relatively small number of uninjured putative members is overly broad and improper." *Id.*

As a threshold matter, Weatherspoon incorrectly argues that considering the preclusive effect of final deficiency judgments or bankruptcy proceedings improperly resolves the merits of the class action at the certification stage. "Although the class certification decision is independent of the ultimate merits of the lawsuit, the applicable substantive law is relevant to a meaningful determination of the certification issues." *Green v. Fred Weber, Inc.*, 254 S.W.3d 874, 880 (Mo. banc 2008); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Further, the Rule 52.08(b)(3) predominance and superiority analysis requires consideration of "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Rule 52.08(b)(3)(B). Considering the "nature and extent" of prior litigation involving individual class members is necessary to determine whether the Rule 52.08 class certification requirements are satisfied and does

not improperly resolve the merits of the claims of the class as a whole.[2]  In this case, the "extent and nature" of the litigation "already commenced . . . against members of the class" is that GCAC obtained final deficiency judgments against approximately 60 percent of class members while approximately 27 percent of class members extinguished their claims in bankruptcy.  The issue, then, is the preclusive effect of the prior deficiency judgments and bankruptcy proceedings.

## Deficiency Judgments: Res Judicata

Res judicata "precludes not only those issues on which the court in the former case was required to pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002) (internal quotation omitted).  Res judicata "includes within its ambit … a prohibition against collateral attack on a judgment." *Wright v. Bartimus Frickleton Robertson & Gorny PC*, 364 S.W.3d 558, 564 (Mo. App. 2011).[3]

---

[2] Weatherspoon also asserts the "general rule" is that affirmative defenses against individual class members do not defeat class certification.  William B. Rubenstein, *Newberg on Class Actions*, § 4:55 (5th ed. 2011).  This general rule is based on "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016).  Here, approximately 87 percent of the class members' claims are precluded by prior final judgments or bankruptcy proceedings.  Under this overly broad class definition, the predominant common issue is that the vast majority of class members have no unresolved claim against GCAC.

[3] Determining whether res judicata applies typically requires analysis of whether the lawsuits share four identities: "1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made." *King Gen.Contractor, Inc. v. Reorganized Church of Jesus Christ Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. Banc 1991).  When a subsequent action constitutes a

7

"A collateral attack is an attempt to impeach a judgment, whether interlocutory or final, in a proceeding not instituted for the express purpose of annulling the judgment." *Beil v. Gaertner*, 197 S.W.2d 611, 613 (Mo. 1946). A collateral attack is appropriate when the underlying judgment is void, but a subsequent action "will not be tolerated as a subterfuge or facade for litigating an issue to which a former final judgment is conclusive." *Flanary v. Rowlett*, 612 S.W.2d 47, 50 (Mo. App. 1981) (declaratory judgment action constituted an impermissible collateral attack upon final decree of dissolution).

The deficiency judgments against approximately 60 percent of the individual class members established their indebtedness to GCAC following sale of the collateral securing the loan.[4] The class action requests "damages equal to the amount of any judgment wrongfully obtained by GCAC," an injunction requiring GCAC to "return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Plaintiff and the classes," and a declaration that GCAC's form UCC notices violate Missouri law. The class action, while "not instituted for the express purpose of

---

collateral attack on a prior judgment, the identities analysis is unnecessary. *Wright*, 364 S.W.3d at 564.

[4] "The right to a deficiency judgment accrues only when there is strict compliance with statutory requirements." *States Res. Corp. v. Gregory*, 339 S.W.3d 591, 596 (Mo. App. 2011) (internal quotation omitted). Section 408.556.1 required GCAC to "allege the facts of the borrower's default, facts sufficient to show compliance with the provisions of sections 400.9-601 to 400.9-629, which provisions are hereby deemed applicable to all credit transactions[.]" Sections 400.9-601 to 400.9-629 govern the class claims regarding default, notice, repossession, acceleration, sale, and the calculation of the deficiency. Further, § 408.556.2 provides "[a] default judgment may not be entered in the action in favor of the lender unless the petition is verified by the lender, or sworn testimony, by affidavit or otherwise, is adduced showing that the lender is entitled to the relief demanded." Therefore, the deficiency judgments against 60 percent the individual class members resolved the issue of GCAC's compliance with statutory requirements relating to the repossession, sale of the collateral, and calculation of the deficiencies.

annulling the judgment," *Gaertner*, 197 S.W.2d at 613, has precisely that effect because the requested relief seeks to nullify and undermine the deficiency judgments previously entered against class members. Therefore, approximately 60 percent of individual class members' claims are impermissible collateral attacks on final deficiency judgments entered against them. Those claims are precluded.

Weatherspoon asserts res judicata does not apply because GCAC obtained the deficiency judgments in associate circuit divisions in which there is no compulsory counterclaim rule.[5] If there is no compulsory counterclaim rule, res judicata generally does not bar the assertion of that counterclaim in a subsequent action. *Hemme v. Bharti*, 183 S.W.3d 593, 599 (Mo. banc 2006). The general rule does not apply, however, when:

> The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

Restatement (Second) of Judgments § 22(2)(b) (1982). The failure to assert a counterclaim in the first action will be given preclusive effect "when allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action." Restatement (Second) of Judgments § 22, cmt. f. In other words, the absence of a compulsory counterclaim rule does not sanction collateral attacks on final judgments. The fact the final deficiency judgments were rendered in

---

[5] Pleadings in associate circuit divisions are generally not subject to the Rule 55.32(a) compulsory counterclaim rule. *Becker Glove Intern., Inc. v. Jack Dubinsky & Sons*, 41 S.W.3d 885, 888 (Mo. banc 2001).

proceedings in which no counterclaim was required does not justify a collateral attack on those judgments in a subsequent class action.[6]

## Bankruptcy: Estoppel

Following repossession of their vehicles, approximately 27 percent of the putative class members discharged their debts to GCAC in bankruptcy. Based on statistical sampling, few, if any, class members disclosed the claims they now assert against GCAC in their schedule of assets filed with the bankruptcy court, yet those claims would have existed at the time of the bankruptcy. A provision in the bankruptcy code, 11 U.S.C. § 521, imposes upon a debtor "an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Strable v. Union Pac. R.R. Co.*, 396 S.W.3d 417, 422 (Mo. App. 2013) (internal quotation omitted). The failure to disclose potential claims against a creditor estops the debtor from later asserting those claims. *Id*. at 422-23, 426. Therefore, approximately 27 percent of individual class members' are estopped from asserting their claims against GCAC in the class action.

## The class definition is overbroad and otherwise deficient

Because approximately 87 percent of individual class members' claims are either precluded by deficiency judgments or have been extinguished in bankruptcy, the vast majority of individual class members have no unresolved claim against GCAC. Like *Coca-*

---

[6] The fact many of the deficiency judgments were entered by default does not change the analysis. Res judicata applies to final judgments entered by default. *Drainage Dist. No. 1 Reformed v. Matthews*, 234 S.W.2d 567, 572-73 (Mo. 1950); *State ex rel. Family Support Division v. Stovall-Reid*, 163 S.W.3d 519, 521-22 (Mo. App. 2005); *State ex rel. Barnett v. Mullen*, 125 S.W.3d 896, 899 (Mo. App. 2004).

*Cola*, in which 80 percent of the putative class suffered no injury, the class definition in this case is likewise overbroad. 249 S.W.3d at 862. The overly broad class definition is not necessarily fatal, because an overly broad "class definition may be modified consistent with the precepts of . . . Rule 52.08 in order to remove the uninjured putative members." *Id.* at 861.

In addition, it is unclear why the court certified only a single subclass whose members constitute only a subset of the members of the class. Normally, subclasses would be differentiated by some distinct characteristic, such as one involving a voluntary and the other an involuntary repossession or another differentiating characteristic. Here, however, there is only one subclass, and it is for those whose vehicles were involuntarily repossessed. It is unclear whether this single subclass was separated from the larger class and the subclass members' interests may diverge from those who had their vehicles returned voluntarily, such as Weatherspoon. As discussed below, this is the reason Weatherspoon is an inappropriate class representative. The circuit court should carefully consider the definition of those subclasses, if any, it may certify.

The circuit court is prohibited from taking any further action other than to decertify the existing class, but it may consider whether to certify a class without the definition problems here identified and that satisfies the typicality and other requirements for a class action, as discussed below.[7]

---

[7] GCAC also asserts class certification was improper because the request for prejudgment interest is barred by § 408.553, which GCAC maintains prohibits the accrual of interest after default and before judgment. Unlike considering the preclusive effect of prior judgments and bankruptcy proceedings to determine the scope of the class, GCAC's statutory interpretation argument

**Weatherspoon's claims are not typical of the class**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 155 (1982) (internal quotation omitted). A class representative's claims must be typical of the claims of the class. Rule 52.08(a)(3). To satisfy the typicality requirement, the class representative "must be a part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (internal quotation omitted); *Harris v. Union Elec. Co.,* 766 S.W.2d 80, 86 n.10 (Mo. banc 1989).

Weatherspoon's claims are not typical of the class because she did not suffer the same alleged injury as the class members. The second class consists of individuals "who had the possession of their collateral taken by GCAC involuntarily." Weatherspoon testified she voluntarily surrendered her vehicle to GCAC. Further, as the class representative, Weatherspoon requested "damages equal to the amount of any judgment wrongfully obtained by GCAC" and "a mandatory injunction compelling GCAC to return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Plaintiff and the classes." GCAC did not obtain a deficiency

---

attempts to resolve the merits of the class action at the certification stage. While this Court expresses no opinion about the ultimate merits of Weatherspoon's claim for prejudgment interest, a court may not refuse certification "on the ground that it thinks the class will eventually lose on the merits." *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 480 (7th Cir. 2002).

GCAC also asserts class certification was improper because it did not send right-to-cure notices. Weatherspoon asserts that, even if GCAC did not send improper notices, GCAC violated § 408.555 by improperly accelerating the loans and repossessing the collateral. This argument also goes to the merits of the action, not the scope of the class.

judgment against Weatherspoon.  Weatherspoon's claim is not typical of the class because she was not injured by an involuntary repossession or by a deficiency judgment.

The circuit court abused its discretion by certifying a class with Weatherspoon as the sole class representative because her claims are not typical of the class and she is not a member of the subclass.  The circuit court is prohibited from certifying the class and subclass as presently defined.  The court is not prohibited from considering whether Weatherspoon is typical of a redefined class, if a new class definition is proposed and meets the criteria set out in the rule and explained in this opinion, nor is it prohibited from appointing a new or additional class representative should one be proposed with claims typical of the class and who otherwise satisfies the criteria set out in the rule.

## Conclusion

The circuit court abused its discretion by certifying an overly broad class with a class representative whose claims are not typical of the class.  The preliminary writ of prohibition is made permanent, and the circuit court is directed to take no action inconsistent with this opinion.

_____
Zel M. Fischer, Chief Justice


All concur.

13