(699 P.2d 553)
No. 56,294

FARMERS STATE BANK, INGALLS, KANSAS, *Plaintiff-Appellee*, v. GREG HAFLICH d/b/a FINNEY FAB a/k/a GREG G. HAFLICH a/k/a GREGORY HAFLICH, *Defendant-Appellant*.

Opinion filed May 2, 1985.

Donald A. Frigon, of Frigon & Campbell, Chrtd., of Dodge City, for appellant.

Byron G. Larson, of Williams, Larson, Strobel, Estes & Malone, of Dodge City, for appellee.

Before MEYER, P.J., BRISCOE, J., and CORWIN C. SPENCER, J. Retired, Assigned.

MEYER, J.: Greg Haflich (defendant) appeals from orders by the district court of Gray County enforced in favor of plaintiff, Farmers State Bank (Bank), entitling it to judgment against defendant in the amount of $27,132.71 for indebtedness owing on a promissory note. The defendant was awarded $9,280 as damages on his cross-claim.

At issue herein is a promissory note executed by defendant for $18,216 with a 15% interest rate, to be paid in eleven equal monthly installments of $250.00, and a twelfth and final balloon payment of $18,179.19. This note was the culmination of four previous financial transactions between defendant and the Bank. As a result of this and other transactions, the Bank held (1) the promissory note in conjunction with a security interest in the inventory, accounts receivable, and contract rights of "Finney Fab," an insulation company wholly owned by defendant; (2) certificates of deposit owned by defendant; (3) liens on four vehicles owned by defendant (three of which had first liens in favor of the General Motors Acceptance Corporation); and (4) a $20,000 second mortgage on defendant's personal residence.

Defendant's payments on the note were to begin January 5, 1981. From the beginning defendant began missing the installment payments. In April, the overdue amounts were made up by defendant, but since that time, defendant has made no further payments on the note.

The Bank claims it mailed several "past due" notices to defendant regarding his delinquent and overdue payments. The defendant, however, denies having received any notice until receipt of the "notice of right to cure default" sent him by the Bank pursuant to K.S.A. 16a-5-110, on September 24, 1981.

Thereafter, on October 19, 1981, the Bank went to defendant's business and repossessed inventory and personal property inside the building as well as four vehicles parked outside.

On November 3, 1981, the Bank petitioned the court for judgment against defendant in the amount of $16,269.98 principal owing on the note and $5,264.05 for money paid the principal lienholder on the vehicles, past due interest of $1,393.63, interest at 15% from November 3, 1981, costs of the action, and an order allowing the property held by the Bank to be sold to satisfy the indebtedness due it. The defendant answered with general denials of all amounts owing the Bank, and, in addition, counterclaimed for conversion and damages. A jury trial was held July 25, 26, and 27, 1983. At the close of the Bank's case, the trial court found the Bank had a valid security interest in the inventory and vehicles it had repossessed. The court then found defendant indebted to the Bank in the amount of $16,269.98 plus interest of $5,598.60; and the further sum of $5,264.05 which the Bank had paid the principal lienholders on the vehicles, plus interest on this amount from July 25, 1983.

At trial, the Bank admitted it wrongfully took items of personal property belonging to defendant. The jury thus had before it the issue of damages with regard to the wrongful repossession of the property taken by the Bank which was not collateral under the security interest held by it. The jury returned a verdict on defendant's counterclaim, assessing damages against the Bank in the amount of $9,280. As noted, the trial court determined that the inventory and vehicles were properly repossessed. As later explained herein, we conclude the trial court's determination in this respect was error. Because of the trial court's erroneous determination, the jury did not have before it the matter of determining what damages, if any, defendant suffered because of the repossession of inventory and vehicles. Since the jury thus had before it *only* the question of damages for the improper taking of property other than the inventory and vehicles, an ultimate determination must be made by the trier of fact as to how much the $9,280.00 verdict should be augmented by damages attributed to the improper repossession of the inventory and vehicles.

Initially we note that the defendant borrowed sums from the Bank as business loans and not for consumer purposes. Although

the Kansas Uniform Consumer Credit Code (U.C.C.C.) does not ordinarily apply to business loans (see K.S.A. 16a-1-102, 16a-1-201, and 16a-1-301), the parties to an agreement may subject themselves to the provisions of the U.C.C.C. by written agreement signed by both parties. K.S.A. 16a-1-109. Here, the security agreement signed by defendant stated its terms were subject to the U.C.C.C. Thus, the rights of the parties herein are subject to both the Kansas Uniform Commercial Code (U.C.C.) and the U.C.C.C.

The defendant first contends that the trial court erred in not holding the repossession of all items, even the inventory otherwise properly subject to repossession by the Bank, was unlawful for failure to give proper notice of the right to cure default pursuant to K.S.A. 16a-5-110. Defendant claims compliance with the statutory provisions was not had; therefore, notice of the right to cure default was defective and the Bank's repossession of the collateral was not proper. The Bank contends its notice was not defective, that it was "substantially accurate," and that the decision of the trial court finding compliance with the statute should be affirmed.

In the case of default on a consumer credit transaction because of a missed installment, Kansas law now requires that the creditor wait ten days before sending a notice to the consumer of his "right to cure." K.S.A. 16a-5-110. The creditor must then wait 20 days after sending the notice, during which time no acceleration of the unpaid balance or repossession of the collateral may occur. K.S.A. 16a-5-111. If the debtor pays the missing installment, plus any unpaid delinquency or deferral charges during the 20-day period, he has cured his default. If the debtor fails to cure or misses another installment, the creditor can accelerate and repossess the collateral under Article Nine of the U.C.C.

In the instant case, the security agreement contained a definition of default to include the failure to make an agreed payment. Under K.S.A. 16a-5-111(2), notice of default must be provided and the debtor must be given a right to cure the default. In the case at bar, notice of default and the right to cure was given defendant. The defendant had been in default for more than the 10-day period required by K.S.A. 16a-5-110. The issue in this case concerns the required content of that notice.

K.S.A. 16a-5-110 requires that the notice of right to cure be in writing and states that such notice *shall conspicuously state*:

1. the creditor's name, address, and telephone number;
2. a brief description of the credit transaction;
3. a statement that the consumer has the right to cure the default;
4. the amount of payment due and the date by which payment must be made.

An examination of the notice sent to defendant reveals that it contained the name, address, and phone number of the Bank, and that it informed the debtor that he had the right to cure default. The notice, however, omitted any description or reference to the type of credit transaction involved; and although it did specify an amount then due, that amount was not the sum total of the missed installment payments, but was the accelerated full amount of the loan, $17,473.51. In other words, the notice of the "right to cure" sent to defendant was simply notice that the Bank was demanding all amounts due under the loan, rather than the $1,250.00 properly due at that time. The defendant was *not* given the right to make up the missed installments and continue under the terms of the original contract. In addition, the notice specified that the last date by which payment of even the full accelerated amount would be accepted was October 5, 1981. As stated in the Kansas Comments to K.S.A. 16a-5-110, the "last day for payment" which must be shown in the notice *must* be the date of the end of the cure period in K.S.A. 16a-5-111. That is, the "last day for payment" must be a date at least 20 days after notice of the right to cure was sent. In this case, as notice was sent September 24, 1981, the last day for payment was, and should have been stated as, October 14, 1981, and *not* October 5, 1981.

The trial court reviewed the notice sent defendant and concluded that although there was technical noncompliance with the statute, nevertheless the spirit and intent of K.S.A. 16a-5-110 was met. The court thus held that the Bank's repossession of collateral listed on the security agreement was not rendered improper because of insufficient notice.

The plain wording of the statute contradicts the district court's finding that compliance with the spirit and intent of the statute is acceptable. The notice of right to cure sent a debtor must strictly comply with the provisions of K.S.A. 16a-5-110 and 16a-5-111;

otherwise any repossession thereafter by the creditor will be wrongful.

We note that K.S.A. 16a-5-110 states that the required notice *shall* contain a brief description of the credit transaction, and K.S.A. 16a-5-111 states a creditor *may not* accelerate maturity of the obligation until after notice is given. Moreover, the Kansas Comments to these two statutes state plainly that it is only the amounts of the missed installment payments which may be asked for and included in the notice. The creditor may not ask for the entire sum due under the terms of the loan. As evidenced by the statutes and comments, the legislative intent was to allow the debtor the opportunity to "cure" his default by making up the missed installments, and thereafter to continue under the terms of the contract. Where statutes are plain and unambiguous, courts *must* give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *Johnston v. Tony's Pizza Service*, 232 Kan. 848, 658 P.2d 1047 (1983). The district court in this case failed to give effect to the legislative intent. Thus, the district court erred in finding that compliance with the spirit of the statute was sufficient.

Because of insufficient notice, therefore, the Bank's repossession of even that collateral properly the subject of the security interest (the inventory) was wrongful (see *Medling v. Wecoe Credit Union*, 234 Kan. 852, 859, 678 P.2d 1115 (1984); and *Klingbiel v. Commerical Credit Corporation*, 439 F.2d 1303 [10th Cir. 1971]), and the defendant is entitled to damages arising out of that wrongful repossession.

The Bank's repossession of the vehicles on defendant's premises was also wrongful for the reason that the Bank did not have an applicable security interest in them. As stated, the Bank's security agreement with defendant provides it with a security interest in only the "inventory, accounts receivable and contract rights" of defendant's business. No mention is made of defendant's vehicles. A security interest which does not list items as secured collateral does not give a creditor a secured status with respect to them. K.S.A. 84-9-203(1)(a). Absent this, the Bank could not pursue the creditors' remedies provided in K.S.A. 84-9-501 *et seq.*

We note with interest that a Bank officer testified at trial that although the vehicles were not on the security agreement, there were liens on the titles and a "secured title application" had

been sent to the Motor Vehicle Department for recording. Again, later in questioning, the Bank officer made reference to a certain secured title application on each vehicle filed with the Kansas Motor Vehicle Department.

These statements indicate a security agreement may be in existence separate and apart from that executed in conjunction with the promissory note. If there *were* separate security agreements, these documents have not been provided this court and the Bank does not refer to them in its brief on appeal. Thus this court need not address this possibility. Therefore, in addition to damages for the wrongful repossession of the inventory, the trier of fact must also consider damages for the wrongful vehicle repossession. As conceded at oral argument, one of the vehicles was returned to defendant and need not be considered herein unless defendant claims damages for its temporary repossession.

Whether the Bank is liable for conversion in addition to damages for wrongful repossession of the inventory and vehicles depends upon whether the defendant has established a prima facie case for conversion. Conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. *Temmen v. Kent-Brown Chevrolet Co.,* 227 Kan. 45, 605 P.2d 95 (1980); *Desbien v. Penokee Farmers Union Cooperative Association,* 220 Kan. 358, 552 P.2d 917 (1976). The "intent" required for conversion is simply to use or dispose of the goods of another, and the knowledge or ignorance of the actor as to their ownership has no influence in deciding the question of conversion. *Speer v. City of Dodge City,* 6 Kan. App. 2d 798, 636 P.2d 178 (1981); see also *Nelson v. Hy-Grade Construction & Materials, Inc.,* 215 Kan. 631, 527 P.2d 1059 (1974).

Based upon these rules, the wrongful taking of defendant's inventory and vehicles appears to create at least a prima facie case for conversion. We conclude the decision of the district court regarding the sufficiency of the notice was error, and that the issue regarding damages suffered by the wrongful repossession and a determination of damages, if any, for conversion must be decided.

The defendant next contends that punitive damages are recoverable against the Bank because of its wrongful repossession.

Under Kansas law, an award of punitive damages is permitted whenever actual damages have been established and the elements of fraud, malice, gross negligence, or oppression are mingled into the controversy. *Klingbiel v. Commerical Credit Corporation*, 439 F.2d 1303; see also *Slough v. J. I. Case Co.*, 8 Kan. App. 2d 104, Syl. ¶ 6, 650 P.2d 729, *rev. denied* 232 Kan. 876 (1982).

In the instant case, the trial court found as a matter of law that the jury could not consider the issue of punitive damages because of a lack of any evidence in the record to support such damages. Having examined the record, we conclude that the trial court is correct.

The defendant has presented no evidence which the trial court disregarded, nor has the defendant claimed bias, passion, or prejudice. As such, the decision of the district court regarding punitive damages will not be disturbed.

The defendant's final contention is that the trial court erred in refusing to consider his motion for attorney fees. Because the Bank failed to comply with the notice provisions of K.S.A. 16a-5-110, the Bank was liable under the Kansas Uniform Consumer Credit Code for the attorney fees incurred by defendant in defending this action.

K.S.A. 16a-5-201(8) provides as follows:

"In an action in which it is found that a creditor has violated any provision of K.S.A. 16a-1-101 through 16a-9-102, the court *shall award* to the consumer the costs of the action and to his attorneys their reasonable fees. Reasonable attorney's fees shall be determined by the value of the time reasonably expended by the attorney and not by the amount of the recovery on behalf of the consumer." (Emphasis added.)

This statute is mandatory and is not a matter within the trial court's discretion. *United Kansas Bank & Trust Co. v. Rixner*, 4 Kan. App. 2d 662, 668, 610 P.2d 116, *aff'd* 228 Kan. 633 (1980). Because of the conclusion reached that the Bank violated K.S.A. 16a-5-110 by sending deficient notice to the defendant, the defendant is entitled to an award of attorney fees.

Because of the conclusions reached above, the award of damages in the amount of $9,280 to defendant for harm suffered as a result of the wrongful repossession of his personal property is affirmed. The decision of the district court regarding the sufficiency of the notice of right to cure and the propriety of the Bank's repossession of defendant's inventory and vehicles is

reversed and remanded for a determination regarding the issue of how much defendant's damages should be increased (beyond $9,280) by reason of such wrongful repossession of his inventory and vehicles, and for a determination of damages, if any, caused by conversion. Moreover, defendant is entitled to costs and reasonable attorney fees in an amount to be determined by the trial court in accord with K.S.A. 16a-1-101 *et seq.*

Affirmed in part, reversed in part, and remanded.