Alok Ahuja, Judge
Missouri Credit Union sued Nicole Diaz and Matthew Weir in the Circuit Court of Boone County, to recover a deficiency balance owed on a Retail Installment Sale Contract. The contract governed Diaz and Weir's purchase of a used 2013 Kia Optima from Head Motor Company in Columbia. The Credit Union filed its lawsuit after repossessing and selling the car through a private auction.
Diaz and Weir counterclaimed, alleging that the Credit Union had failed to send them the pre-sale and post-disposition notices required by Missouri statutes. Following a brief bench trial, the circuit court entered judgment for the Credit Union. It awarded the Credit Union total damages of $11,600.19.
Diaz and Weir appeal. Because we conclude that the Credit Union failed to comply with the Missouri statutes specifying *858 the pre- and post-sale notices to which Diaz and Weir were entitled, we reverse the circuit court's judgment, and remand the case to the circuit court for further proceedings on Diaz and Weir's counterclaim.
Factual Background
On March 12, 2015, Diaz and Weir jointly purchased a used 2013 Kia Optima automobile from Head Motor Company in Columbia. As part of the transaction they signed a Retail Installment Sale Contract, which identified them as the Buyers, and Head Motor Company as the "Seller-Creditor." Under the contract, Diaz and Weir were to make 78 monthly payments of $447.80 for the vehicle, in addition to their $400.00 cash down payment, and a trade-in allowance of $1,500.00 they were given by Head Motor. With fees and interest, the contract listed the Total Sale Price for the vehicle to be $36,828.40. The Credit Union financed the purchase of the vehicle, and Head Motor Company assigned its rights under the Retail Installment Sale Contract to the Credit Union.
Diaz and Weir made their initial monthly payment on the contract on April 18, 2015. When it did not receive the next monthly payment, the Credit Union sent Diaz and Weir a First Notice of Right to Cure Default on June 11, 2015. The notice advised Diaz and Weir that, if they made their regular monthly payment of $447.80 by July 1, 2015, the contract would continue without penalty. Diaz and Weir made a second $447.80 payment on June 25, 2015. They made no further payments on the loan.
On July 13, 2015, the Credit Union sent Diaz and Weir a Second Notice of Right to Cure Default, which was largely similar to the first notice. The second notice included the following information:
SECOND NOTICE OF RIGHT TO CURE DEFAULT Account Information: Account Number *******607-0010 Payoff Amount $30,920.92 Loan Amount $30,719.73 Payoff as of 07/13/2015 Date of Loan 03/20/2015 Past Due Amount $489.05 Payment Amount $447.80 Last Day for Payment 08/02/2015 Frequency Monthly
Below this information, the notice stated: "You are late in making your payment(s). If you pay the Current Due Amount (above) by the Last Day for Payment (above), you may continue with the contract as though you were not late."
Because Diaz and Weir failed to cure the second default, the Credit Union repossessed their vehicle on September 7, 2015. The following day, the Credit Union sent Diaz and Weir a written notice of its intent to sell the collateral, and on October 9, 2015, it sold the car for $19,500.00 at a private auction. On October 14, 2015, the Credit Union notified Diaz and Weir of the sale, and advised them that they remained liable for a deficiency balance of $11,833.49 on the Retail Installment Sale Contract. The October 14 notice also advised Diaz and Weir that "interest will continue to accrue on that balance at a rate of $1.27 per day until the loan is paid in full."
On November 3, 2015, the Credit Union filed its petition in the circuit court to recover the deficiency balance. Although the circuit court initially entered a default judgment against Diaz and Weir, it later granted their motion to set the default aside. Diaz and Weir then filed their answer and a counterclaim, which alleged that the Credit Union had failed to provide them with the pre- and post-sale notices *859 required by statute. Diaz and Weir sought compensatory and punitive damages, as well as attorney's fees, on their counterclaim.
On December 2, 2016, the circuit court held a bench trial on the parties' respective claims. On December 8, 2016, the court entered a judgment for the Credit Union. On its affirmative claim, the circuit court awarded the Credit Union the total amount of $11,600.19: $8,991.08 in unpaid principal; $510.51 in accrued interest at the contract rate; and $2,098.60 in attorney's fees and costs. The judgment ordered that Diaz and Weir take nothing on their counterclaim.
Diaz and Weir appeal.
Standard of Review
In this bench-tried case, "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). Issues of law are reviewed de novo. Am. Eagle Waste Indus., LLC v. St. Louis Cnty. , 379 S.W.3d 813, 823 (Mo. banc 2012).
Discussion
I.
In their first Point, Diaz and Weir claim that the Credit Union's second right-to-cure notice failed to clearly state the amount due in order to cure the default.
With respect to consumer transactions, Missouri law provides that, "[a]fter a borrower has been in default for ten days for failure to make a required payment and has not voluntarily surrendered possession of the collateral, a lender may give the borrower and all cosigners on the credit transaction the notice described in this section." § 408.554.1.[1] "[T]he notice shall be in writing and conspicuously state: The name, address and telephone number of the lender to whom payment is to be made, a brief identification of the credit transaction, the borrower's right to cure the default, and the amount of payment and date by which payment must be made to cure the default. " § 408.554.2 (emphasis added). Section 408.554.2 also provides that "[a] notice in substantially the following form complies with this subsection:"
(name, address, and telephone number of lender)
(account number, if any)
(brief identification of credit transaction)
(amount) is the AMOUNT NOW DUE
(date) is the LAST DAY FOR PAYMENT
You are late in making your payment(s). If you pay the AMOUNT NOW DUE (above) by the LAST DAY FOR PAYMENT (above), you may continue with the contract as though you were not late. If you do not pay by that date, we may exercise our rights under the law.
A creditor generally cannot take action against loan collateral until it has provided notice to the borrower of the right to cure, and given the borrower twenty days in which to cure a payment default:
*860 [A]fter a default consisting only of the borrower's failure to make a required payment, a lender, because of that default, may neither accelerate maturity of the unpaid balance nor take possession of or otherwise enforce a security interest until twenty days after a notice of the borrower's right to cure is given both to the borrower and to all cosigners on the credit transaction ...; notice shall not be given prior to default. Until expiration of the minimum applicable period after the notice is given, the borrower or cosigner may cure all defaults consisting of a failure to make the required payment by tendering the amount of all unpaid sums due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges. Cure restores the borrower to his rights as though the default had not occurred.
§ 408.555.1.
Prior to the enactment of Missouri's modern commercial statutes, the common-law rule was that a creditor which repossessed collateral generally could not thereafter recover any unpaid balance on the debt; the rationale was that, by recovering possession of the property, the creditor had essentially rescinded the sale transaction. See , e.g. , Keystone Press, Inc. v. Bovard , 153 S.W.2d 130, 131-32 (Mo. App. 1941) ; Laclede Power Co. v. Est. of Ennis Stationery Co. , 79 Mo.App. 302, 307 (1899). Missouri statutes now permit a lender in many circumstances to recover a deficiency judgment following repossession and sale of the collateral securing a loan. See , e.g. , § 400.9-615(d)(2). Because "deficiency judgments after repossession of collateral are in derogation of the common law," however, Missouri courts have held that "any right to a deficiency accrues only after strict compliance with the relevant statutes." Gateway Aviation, Inc. v. Cessna Aircraft Co. , 577 S.W.2d 860, 863 (Mo. App. 1978) ; accord , e.g. , Boulevard Bank v. Malott , 397 S.W.3d 458, 463 (Mo. App. W.D. 2013) ; States Resources Corp. v. Gregory , 339 S.W.3d 591, 596 (Mo. App. S.D. 2011) ; McKesson Corp. v. Colman's Grant Village, Inc. , 938 S.W.2d 631, 633-34 (Mo. App. E.D. 1997).
As the Credit Union points out, the Missouri cases announcing the strict compliance, "no notice-no deficiency" rule have involved the pre-sale notices required by Missouri's Uniform Commercial Code. Those pre-sale notices inform a borrower of the lender's intention to sell collateral, and of the manner in which the lender intends to dispose of the collateral. The Credit Union argues that this same strict compliance rule should not be applied to the post-default right-to-cure notice at issue here. We disagree. First, just like the pre-sale notices involved in prior cases, the right-to-cure notice at issue here is part of the process by which a lender enforces its rights against collateral following a payment default by a borrower; this process may ultimately result in a deficiency which the lender seeks to collect through litigation. Under § 408.555.1, the lender cannot take any action to accelerate a loan, or enforce against collateral, until the right-to-cure notice has been given, and the cure period has run. Because a right-to-cure notice is a statutory pre-condition to a lender obtaining a deficiency judgment-a judgment which is inconsistent with common-law principles-§ 408.554 is one of the "relevant statutes" with which a lender must strictly comply. Gateway Aviation , 577 S.W.2d at 863.
Second, the right-to-cure notice has the same consumer-protective purpose as a pre-sale notice, and the requirement of a right-to-cure notice should accordingly be enforced as rigorously as the requirement for pre-sale notice. The official comments *861 to § 5.110 of the Uniform Consumer Credit Code (1974), on which § 408.554 is based, make clear that the purpose of the right-to-cure notice is "to give the consumer enough information to understand his predicament and to encourage him to take appropriate steps to alleviate it"; it "gives the average consumer the opportunity to rehabilitate his account, bring a billing error to the attention of or present a breach of warranty claim to the creditor, or negotiate a refinancing or deferral arrangement that may be required by a change in his financial circumstances." 7 Pt. III UNIFORM LAWS ANNOTATED at 237, 238 (2002). Similarly,
[t]he purpose of statutory [pre-sale] notice is to apprise a debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest. Proper notice provides the debtor the opportunity to: (1) discharge the debt and reclaim the collateral, (2) find another purchaser, or (3) verify that the sale is conducted in a commercially reasonable manner.
States Resources , 339 S.W.3d at 596 (citations and internal quotation marks omitted). Because both pre-sale and right-to-cure notices are intended to allow consumers to avoid repossession and sale of their property, or otherwise mitigate the financial consequences of a loan default, the provisions should be enforced in the same fashion.
Finally, courts in at least two other states with similar statutes have held that a lender must strictly comply with the statutory requirement of a right-to-cure notice before accelerating a loan or repossessing collateral. See First Nat'l Bank v. Union Tavern Corp. , 794 P.2d 261, 263 (Colo. App. 1990) ("A lender must strictly comply with the notice provisions of the [Uniform Consumer Credit Code] before it can accelerate a loan and repossess collateral."); Farmers State Bank v. Haflich , 10 Kan.App.2d 333, 699 P.2d 553, 557 (1985) ("The notice of right to cure sent a debtor must strictly comply with the provisions of [the relevant Kansas statute]; otherwise any repossession thereafter by the creditor will be wrongful.").[2]
Accordingly, the Credit Union was required to strictly comply with the requirements of § 408.554. Under this strict-compliance standard, "[a]ny doubt as to whether there has been compliance is to be resolved in favor of the debtor." States Resources , 339 S.W.3d at 596 (citing Mancuso v. Long Beach Acceptance Corp. , 254 S.W.3d 88, 95 (Mo. App. W.D. 2008) ); accord , Boulevard Bank , 397 S.W.3d at 463.
The Credit Union's second right-to-cure notice failed to "conspicuously" advise Diaz and Weir of "the amount of payment ... which ... must be made to cure the default." § 408.554.2. To be "conspicuous," the information must be "obvious to the eye or mind," "plainly visible," and "manifest." WEBSTER'S THIRD NEW INT'L DICTIONARY at 485 (unabridged ed. 1993). The Credit Union's right-to-cure notice listed a "Loan Amount," a "Payment Amount," a "Payoff Amount," and a "Past Due Amount." It then advised Diaz and Weir that they were "late in making [their] payment(s),"
*862 and that they could cure the default by "pay[ing] the Current Due Amount (above)" by August 2, 2015. Given that the phrase "Current Due Amount" is capitalized, it would appear to be a defined term, used in a precise or technical manner. The notice also stated that the "Current Due Amount" was listed "above." Yet the text above this statement does not report a "Current Due Amount." The Credit Union's Collections Manager testified that the "Current Due Amount" Diaz and Weir were required to pay to cure the default on their loan was the "Past Due Amount" listed in the second right-to-cure notice. Given that "past" and "current" are virtually antonyms, however,[3] it would not be obvious to a lay consumer that the "Past Due Amount" and the "Current Due Amount" were intended to mean the same thing. Notably, the "safe harbor" form provided in § 408.554.2 uses the unambiguous term "Amount Now Due," twice, to refer to the sum which a borrower must pay to cure a default. Although the Credit Union's right-to-sue notice largely followed the "safe harbor" form, it inexplicably chose to substitute two different terms for the phrase "Amount Now Due."
The Credit Union's second right-to-cure notice was ambiguous and confusing concerning the amount Diaz and Weir were required to pay to cure their default, and it therefore failed to strictly comply with the requirements of § 408.554.2. Because the Credit Union failed to strictly comply with a relevant statute, it forfeited its right to a deficiency judgment.
Point I is granted.
II.
In their second Point, Diaz and Weir claim that the Credit Union's post-sale notice violated § 400.9-616, because it failed to provide an adequate explanation of the deficiency balance for which they remained liable.[4]
The Uniform Commercial Code adopted in Missouri "reflects the view that, in every consumer-goods transaction, the debtor or obligor is entitled to know the amount of a surplus or deficiency and the basis upon which the surplus or deficiency was calculated." § 400.9-616, comment 2. Accordingly, § 400.9-616(b) provides that,
[i]n a consumer-goods transaction in which the debtor is entitled to a surplus or a consumer obligor is liable for a deficiency under section 400.9-615, the secured party shall:
(1) Send an explanation to the debtor or consumer obligor, as applicable, after the disposition and:
(A) Before or when the secured party accounts to the debtor and pays any surplus or first makes written demand on the consumer obligor after the disposition for payment of the deficiency; and
(B) Within fourteen days after receipt of a request; or *863 (2) In the case of a consumer obligor who is liable for a deficiency, within fourteen days after receipt of a request, send to the consumer obligor a record waiving the secured party's right to a deficiency.
The statute also specifies the contents of the "explanation" which a borrower must provide. It states:
"Explanation" means a writing that:
(A) States the amount of the surplus or deficiency;
(B) Provides an explanation in accordance with subsection (c) of how the secured party calculated the surplus or deficiency;
(C) States, if applicable, that future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency ; and
(D) Provides a telephone number or mailing address from which additional information concerning the transaction is available.
§ 400.9-616(a)(1) (emphasis added).
Diaz and Weir argue that the Credit Union failed to comply with subsection (a)(1)(C), because the deficiency notice failed to advise them that future charges or rebates could affect the deficiency balance. We agree. Apart from calculating the current amount of the deficiency for which Diaz and Weir were liable, the October 14, 2015 deficiency notice made reference to only a single circumstances which would alter the deficiency balance in the future: the accrual of post-notice interest at the rate of $1.27 per day.
At trial, the Credit Union's Collection Manager testified to multiple post-deficiency-notice charges and refunds which substantially altered the amount of the deficiency the Credit Union was seeking to recover from Diaz and Weir. Most significantly, the Credit Union's witness testified that the deficiency balance was reduced by a "GAP" or "GAAP" refund of $733.85,[5] and an extended warranty rebate of $2,193.56; on the other hand, the deficiency was increased by a $75.00 detail fee, and by $2,091.77 in attorney's fees. Yet even though § 400.9-616(a)(1)(C) requires a deficiency notice to "[s]tate[ ], if applicable, that future debits, credits, charges, ... interest, rebates, and expenses may affect the amount of the surplus or deficiency," the deficiency notice makes no reference to the possibility that the deficiency would be altered by future charges or refunds-other than $1.27 in daily interest.
Section 400.9-616(d) provides that "[a] particular phrasing of the [post-sale] explanation is not required. An explanation complying substantially with the requirements of subsection (a) is sufficient, even if it includes minor errors that are not seriously misleading." The Credit Union's deficiency notice did not "substantially comply" with the statutory requirements, and the failure to mention the prospect of future charges and refunds, totaling thousands of dollars, is not merely a "minor error." The later refunds reduced the deficiency balance stated in deficiency notice by almost 25%, while the post-notice charges added more than 18% to the claimed deficiency. These are significant alterations to the deficiency balance stated in the October 14, 2015 letter. Under § 400.9-616(a)(1)(C), the Credit Union was required to alert Diaz and Weir to the prospect that the deficiency would be altered by future charges and refunds.
Under § 408.556.1, "[i]n any action brought by a lender against a borrower arising from default, the petition shall allege ... facts sufficient to show compliance *864 with the provisions of sections 400.9-601 to 400.9-629, RSMo." In this case, the Credit Union could not show such compliance, because of the defects in its post-sale deficiency notice. The circuit court erred by awarding the Credit Union a deficiency judgment in these circumstances.
Point II is granted.
III.
In their third Point, Diaz and Weir ask this Court to reverse the circuit court's entry of judgment against them on their counterclaim. Given our reversal of the circuit court's finding that the Credit Union had complied with its statutory notification obligations, we likewise reverse the circuit court's grant of judgment to the Credit Union on Diaz and Weir's counterclaim, and remand the case to the circuit court for further proceedings on the counterclaim.
In their fourth Point, Diaz and Werner argue that the circuit court erred in admitting the Retail Installment Sale Contract into evidence, because the Credit Union failed to lay a proper foundation for the contract's admission as a business record. Given our dispositions of Points I and II, it is unnecessary for us to address this claim of evidentiary error.
Conclusion
Because the Credit Union failed to comply with its statutory notice obligations, we reverse the judgment entered in the Credit Union's favor, and remand the case to the circuit court for further proceedings on Diaz and Weir's counterclaim.
All concur.

Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri. The relevant statutory provisions have not changed since the time of the underlying transaction in March 2015.
Section 408.551 specifies that "[s]ections 408.551 to 408.562 shall apply to any credit transaction made primarily for personal, family or household purposes."

Section 408.554.2 provides that "[a] notice in substantially the following form complies with this subsection." This "safe harbor" provision makes clear that the right-to-cure notice need not be worded in a particular way. The "safe harbor" provision is not inconsistent with requiring creditors to strictly comply with the requirement that the right-to-cure notice "conspicuously" provide the borrower with certain information. Cf. States Resources , 339 S.W.3d at 597 (requiring strict compliance with statute specifying the information required in a pre-sale notice is consistent with § 400.9-614(2), which provides that "[a] particular phrasing of the notification is not required").

"Past" means "gone by," "just gone by or elapsed," or "immediately preceding." Webster's Third New Int'l Dictionary at 1652 (unabridged ed. 1993). "Current," in contrast, means "presently elapsing," or "occurring in or belonging to the present time." Id. at 557.

Our resolution of Point I is sufficient to require that the deficiency judgment in favor of the Credit Union be reversed. Although resolution of Point II may be unnecessary in relation to the Credit Union 's claim, Diaz and Weir's counterclaim seeks separate remedies with respect to the defects in the right-to-cure notice, and in the Credit Union's post-sale deficiency notice. Because Diaz and Weir may be entitled to different or additional relief depending on whether the post-sale notice is deficient, we address their second Point, despite our ruling in their favor on Point I.

The nature of this refund is not further explained in the trial testimony or exhibits.