In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

THE CENTRAL TRUST BANK, ) No. ED109020
 )
 Appellant, ) Appeal from the Circuit Court
 ) of St. Louis County
 vs. ) 19SL-AC14380
 )
BARBARA BRANCH and ) Honorable Matthew H. Hearne
ALEXIS BRANCH, )
 )
 Respondents. ) Filed: July 27, 2021

 The Central Trust Bank (“Plaintiff”) appeals the judgment, entered after a bench trial, in

favor of Barbara and Alexis Branch (“Defendants”) on Plaintiff’s petition seeking a deficiency

judgment, with respect to the repossession and sale of Defendants’ 2010 Chevrolet Impala (“the

Vehicle”) that had been financed by Plaintiff. We affirm.

 I. BACKGROUND

 On July 22, 2014, Defendants entered into a retail installment contract and security

agreement (collectively “the Agreement”) with Weber Chevrolet Co. for the purchase of the

Vehicle. The Agreement identified Defendants’ address as 6708 Plymouth Avenue, St. Louis

Missouri 63130 (“the Plymouth Avenue address”).

 The Agreement was sold and assigned to Plaintiff, and Plaintiff effectively became the

party who was financing the Vehicle. Defendants’ loan payment obligations under the

Agreement were secured by a security interest in the Vehicle in favor of Plaintiff. According to
Plaintiff, Defendants failed to timely pay amounts due under the Agreement, and as a result,

Plaintiff mailed Defendants right-to-cure notices to the Plymouth Avenue address on January 22,

2015 and May 22, 2015.

 Then, on January 10, 2018, Plaintiff repossessed the Vehicle due to Defendants’ alleged

default of the Agreement. The next day, Plaintiff mailed Defendants a letter titled “Confirmation

of Repossession Notices of Intent to Apply for Repossessed Title and to Sell Collateral” (“the

Pre-Sale Notice”), via certified mail, notifying Defendants that Plaintiff had repossessed the

Vehicle and intended to sell it at a “private sale” on or after January 26, 2018. It is undisputed

the Pre-Sale Notice was addressed to the Plymouth Avenue address, the Pre-Sale Notice was

successfully delivered to the Plymouth Avenue address, and Defendants received the Pre-Sale

Notice. Thereafter, on February 9, 2018, Plaintiff sold the Vehicle at a “dealers-only” auction

conducted by a third party.

 Subsequently, on March 14, 2018, Plaintiff mailed Defendants a letter titled “Notice of

Sale of Collateral” (“the Post-Sale Notice”) by certified mail. The Post-Sale Notice was

addressed to the Plymouth Avenue address and provided in relevant part that the Vehicle had

been sold; Defendants owed a deficiency balance of $8,635.24; “interest will continue to accrue

on that balance at the rate of $1.41 per day until the loan is paid in full”; and “. . . [Plaintiff]

reserve[s] the right to pursue legal action against [Defendants] if the deficiency is not promptly

paid.” According to undisputed United States Postal Service tracking records, delivery of the

Post-Sale Notice was attempted on Friday, March 16, 2018 at 12:02 p.m.; delivery was

unsuccessful on March 16 because there was “[n]o [a]uthorized [r]ecipient [a]vailable”; a

certified mail notice was left at the Plymouth Avenue address on March 16; and the Post-Sale

Notice was unclaimed and ultimately returned to Plaintiff on April 23, 2018.

 2
 Although the Post-Sale Notice was unclaimed and returned to Plaintiff, Plaintiff took no

additional steps to mail or deliver the Post-Sale Notice to Defendants. Instead, Plaintiff’s next

action took place on May 15, 2019, when it filed a petition against Defendants seeking to recover

a deficiency balance in the amount of $8,635.24, interest in the amount of $593.78 due and

owing through May 7, 2019, interest from May 7 forward until the date of the judgment, and

post-judgment interest.

 A bench trial took place on February 6, 2020. Plaintiff’s employee Kyle Johns was the

only witness, and he testified about the “dealers-only” auction at which the Vehicle had been

sold and the various notices Plaintiff had mailed to Defendants.

 The trial court subsequently entered a judgment in favor of Defendants on Plaintiff’s

petition. The court essentially found Plaintiff was not entitled to recover the deficiency balance

and interest from Defendants for two alternative reasons: (1) because Plaintiff failed to properly

send the Post-Sale Notice as required under Missouri law; and (2) because the Pre-Sale Notice

improperly stated the Vehicle would be sold a private sale in that, according to the trial court, a

“dealers-only” auction like the one at which the Vehicle was sold constitutes a public sale under

Missouri law. Plaintiff appeals.

 II. DISCUSSION
 Plaintiff raises a total of three points on appeal. In Plaintiff’s second point on appeal, it

argues the trial court erred in entering judgment in favor of Defendants on the grounds Plaintiff

failed to properly send the Post-Sale Notice as required under Missouri law. For the reasons

 3
discussed below, we find this argument has no merit, and we also find our discussion of

Plaintiff’s second point on appeal is dispositive of this appeal. 1

A. Standard of Review

 Our Court reviews a trial court’s judgment in a court-tried case involving a petition to

recover a deficiency judgment pursuant to Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc

1976). Missouri Credit Union v. Diaz, 545 S.W.3d 856, 858, 859 (Mo. App. W.D. 2018);

Citizens Nat. Bank v. Robertson, 101 S.W.3d 302, 303 (Mo. App. E.D. 2003). Consequently, we

will affirm the trial court’s judgment unless there is no substantial evidence to support it, it is

against the weight of the evidence, or it erroneously declares or applies the law. Id.; see also

Ford Motor Credit Co. LLC v. Harris, 386 S.W.3d 864, 866 (Mo. App. S.D. 2012).

 We presume the trial court’s decision is correct, and it is the appellant’s burden to

demonstrate the decision is incorrect. Harris, 386 S.W.3d at 866. Additionally, in reviewing a

court-tried case, an appellate court is primarily concerned with the correctness of the trial court’s

decision rather than the route taken to reach it. O’Gorman & Sandroni, P.C. v. Dodson, 478

S.W.3d 539, 543 (Mo. App. E.D. 2015). “Therefore, we are obliged to affirm if we determine [ ]

the trial court reached the correct result, regardless of whether the trial court’s proffered reasons

are wrong or insufficient.” Id.

1
 Plaintiff’s first point on appeal asserts the trial court’s judgment is erroneous because some of the trial court’s
findings in its judgment regarding the Pre-Sale Notice are allegedly not supported by the evidence. And Plaintiff’s
third point on appeal contends the trial court erred in entering judgment in favor of Defendants on Plaintiff’s petition
on the grounds the Pre-Sale Notice improperly stated the Vehicle would be sold a private sale because, according to
Plaintiff and contrary to the trial court’s finding, a “dealers-only” auction like the one at which the Vehicle was sold
constitutes a private sale under Missouri law. Because we conclude in our discussion of Plaintiff’s second point on
appeal that the trial court did not err in entering judgment in favor of Defendants on the grounds Plaintiff failed to
properly send the Post-Sale Notice as required under Missouri law, and because we will affirm a judgment in a
court-tried case if we determine the trial court reached the correct result on any grounds, we need not address
Plaintiff’s first and third points on appeal. See O’Gorman & Sandroni, P.C. v. Dodson, 478 S.W.3d 539, 543 (Mo.
App. E.D. 2015); see also Section II. of this opinion.

 4
 As indicated below, the issue of whether Plaintiff failed to properly send the Post-Sale

Notice to Defendants as required under Missouri law is a matter of statutory interpretation,

which is an issue of law subject to de novo review. See Maue v. Fiedler Acres Subdivision, 614

S.W.3d 601, 610 (Mo. App. E.D. 2020); see also Diaz, 545 S.W.3d at 859. “The primary rule in

interpreting a statute is to determine the intent of the legislature from the language used, to give

effect to the intent, and to consider the words in their plain and ordinary meaning.” Maue, 614

S.W.3d at 610. In addition, our Court must read a statute as a whole, give all words their

meaning, and “avoid statutory interpretations that are unjust, absurd, or unreasonable.” Id.

(citations omitted).

B. Relevant Law

 “The right to a deficiency judgment accrues only when there is strict compliance with

statutory requirements.” State ex rel. General Credit Acceptance Company, LLC v. Vincent, 570

S.W.3d 42, 48 n.4 (Mo. banc 2019) (citation omitted). Moreover, under the strict-compliance

standard, “any doubt as to whether there has been compliance is to be resolved in favor of the

debtor.” Diaz, 545 S.W.3d at 861 (citations omitted).

 Section 408.556.1 RSMo. 2016 2 requires a lender such as Plaintiff to “allege the facts of

the borrower’s default, facts sufficient to show compliance with the provisions of sections 400.9-

601 to 400.9-629 [of the Uniform Commercial Code (“UCC”)], which provisions are hereby

deemed applicable to all credit transactions.” 3 Vincent, 570 S.W.3d at 48 n.4 (quoting section

408.556.1); see generally sections 400.9-601 to 400.9-629. Section 400.9-616 of the UCC sets

2
 Unless otherwise indicated, all further statutory references are to RSMo. 2016.
3
 Section 408.556.1 states in full:
 In any action brought by a lender against a borrower arising from default, the petition shall allege
 the facts of the borrower’s default, facts sufficient to show compliance with the provisions
 of sections 400.9-601 to 400.9-629, which provisions are hereby deemed applicable to all credit
 transactions, with respect to any sale or other disposition of collateral for the credit transaction, the
 amount to which the lender is entitled, and an indication of how that amount was determined.

 5
forth the general statutory requirements for a lender’s post-sale notice and “reflects the view that,

in every consumer-goods transaction, the debtor or obligor is entitled to know the amount of a

surplus or deficiency and the basis upon which the surplus or deficiency was calculated.” Diaz,

545 S.W.3d at 862 (quoting comment 2 to section 400.9-616).

 Section 400.9-616(b)(1) of the UCC provides in relevant part: “In a consumer-goods

transaction in which the debtor is entitled to a surplus or a consumer obligor is liable for a

deficiency under section 400.9-615, the secured party shall: [ ] [s]end an explanation to the

debtor or consumer obligor . . ..” (emphasis added); see also section 400.9-616(a)(1) (defining

the term “[e]xplanation”); section 400.9-616(c) (discussing the information and order of

information that must be provided in the explanation). Section 400.9-102(a)(74) of the UCC

defines “[s]end” as being “in connection with a record or notification” and meaning:

 (A) To deposit in the mail, deliver for transmission, or transmit by any other usual
 means of communication, with postage or cost of transmission provided for,
 addressed to any address reasonable under the circumstances; or

 (B) To cause the record or notification to be received within the time that it would
 have been received if properly sent under subparagraph (A)[.]

(emphasis added). Finally, “[a] person ‘notifies’ or ‘gives’ a notice or notification to another

person by taking such steps as may be reasonably required to inform the other person in ordinary

course, whether or not the other person actually comes to know of it.” Section 400.1-202(d)

RSMo. Cum. Supp. 2018 (effective from August 28, 2017 to the present) 4 (providing, inter alia,

the “[g]eneral [d]efinition[ ]” and “[p]rinciples of [i]nterpretation” for “[n]otice” under the

UCC).

 Reading section 400.9-616(b)(1) and the above definitions of “send” and “notice” as a

whole, and giving all words their plain and ordinary meaning, we find a lender properly sends a

4
 All further references to section 400.1-202(d) are to RSMo. Cum. Supp. 2018 (effective from August 28, 2017 to
the present).

 6
post-sale notice under the UCC where: (1) the lender deposits the notification in the mail,

delivers the notification for transmission, or transmits the notification by any other usual means

of communication, with postage or cost of transmission provided for, addressed to any address

reasonable under the circumstances (“the first statutory requirement of the test for properly

sending a post-sale notice”); and (2) the lender takes such steps as may be reasonably required to

inform the consumer obligor in ordinary course, whether or not the consumer obligor actually

comes to know of it (“the second statutory requirement of the test for properly sending a post-

sale notice”). See section 400.9-616(b)(1); section 400.9-102(a)(74)(A)-(B); section 400.1-

202(d); see also Maue, 614 S.W.3d at 610.

C. Analysis

 In this case, the undisputed facts show Plaintiff mailed Defendants the Post-Sale Notice

by certified mail, addressed to the Plymouth Avenue address in the Agreement, and delivery was

attempted at the Plymouth Avenue address. Under these circumstances, we find the evidence

shows Plaintiff deposited the notification in the mail, with postage provided for, and addressed to

a reasonable address, and therefore, Plaintiff met the first statutory requirement of the test for

properly sending a post-sale notice. See id.

 However, the undisputed facts of this case also show delivery of the Post-Sale Notice to

the Plymouth Avenue address was unsuccessful because there was “[n]o [a]uthorized [r]ecipient

[a]vailable”; and the Post-Sale Notice was unclaimed and ultimately returned to Plaintiff on

April 23, 2018. Under these circumstances, where Plaintiff had actual knowledge the Post-Sale

Notice was unclaimed, we find Plaintiff was reasonably required to take additional steps to

inform Defendants of the Post-Sale Notice in ordinary course, such as depositing the Post-Sale

Notice in regular, first-class mail, in order to meet the second statutory requirement of the test for

 7
properly sending a post-sale notice. See id.; Schlereth v. Hardy, 280 S.W.3d 47, 48-53 (Mo.

banc. 2009) (holding, in the context of a due-process analysis, that when a sender mails a notice

by certified mail and the mail is returned unclaimed, the sender has actual knowledge the notice

was unclaimed and “additional reasonable steps to attempt to provide notice” must be taken such

as sending the notice by regular mail as a follow-up to the unclaimed certified mail, which would

create a rebuttable presumption the notice was received if it was not returned as undeliverable)

(quoting Jones v. Flowers, 547 U.S. 220, 225 (2006)). However, because Plaintiff took no

additional steps to mail or deliver the Post-Sale Notice to Defendants after the Post-Sale Notice

mailed by certified mail was returned unclaimed, Plaintiff did not meet the second statutory

requirement of the test for properly sending a post-sale notice under the circumstances of this

case. See id.; section 400.9-616(b)(1); section 400.9-102(a)(74)(A)-(B); section 400.1-202(d).

 Based on the foregoing, the trial court did not err in finding Plaintiff failed to properly

send the Post-Sale Notice to Defendants as required under Missouri law. Moreover, because

Plaintiff did not strictly comply with the statutory requirements for properly sending a post-sale

notice, Plaintiff is not entitled to a deficiency judgment against Defendants. See Vincent, 570

S.W.3d at 48 n.4 (“[t]he right to a deficiency judgment accrues only when there is strict

compliance with statutory requirements”) (citation omitted); Diaz, 545 S.W.3d at 862-84

(holding the trial court erred in awarding a lender a deficiency judgment where the lender could

not show compliance with the statutory requirements for post-sale notice because there were

defects with respect to the contents of the notice). Plaintiff’s second point on appeal is denied.

 8
 III. CONCLUSION

 The trial court’s judgment in favor of Defendants on Plaintiff’s petition seeking a

deficiency judgment is affirmed.

 ROBERT M. CLAYTON III, Judge

Colleen Dolan, P.J., and
Kelly C. Broniec, J., concur.

 9