

# SUPREME COURT OF MISSOURI
## en banc

THE CENTRAL TRUST BANK, )    *Opinion issued September 13, 2022*
                         )
              Appellant, )
                         )
v.                       )    No. SC99297
                         )
BARBARA BRANCH and       )
ALEXIS BRANCH,           )
                         )
             Respondents.)

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Matthew H. Hearne, Judge

The Central Trust Bank appeals a judgment in favor of Barbara and Alexis Branch on its petition for a deficiency judgment in relation to a promissory note and security agreement financing the Branches' 2010 Chevrolet Impala (the "vehicle"). The Bank claims the circuit court erred in finding it failed to provide the Branches with "reasonable notification" after the sale of the vehicle. The Bank also asserts the circuit court erred in determining it did not strictly comply with the requirement that it send a pre-sale notice of disposition stating the method of intended disposition. The Bank's pre-sale notice of disposition stated the vehicle would be sold at a private sale, but the circuit court held the dealers-only auction at which the vehicle was sold was a public sale. Because the Bank

properly sent a post-sale explanation of deficiency and the dealers-only auction was not a public sale, the circuit court's judgment is reversed, and the cause is remanded.

## Factual and Procedural Background

The Branches entered into a retail installment contract and security agreement for the purchase of the vehicle from a dealership in 2014. The security agreement identified the address of the Branches' principal residence in St. Louis and provided all correspondence would be sent to that address. The security agreement was eventually sold and assigned to the Bank.

The Branches defaulted on the loan, and, in January 2015, the Bank sent the Branches a notice of their default and right to cure. Following the notice of right to cure, the Branches made a payment but again defaulted. So, in May 2015, the Bank sent the Branches a second notice of their default and right to cure. The Branches made a payment but again defaulted and missed multiple monthly payments.

In January 2018, the Bank repossessed the vehicle and sent the Branches, via certified mail, a notice with the heading "confirmation of repossession notices of intent to apply for repossessed title and to sell collateral" (the "pre-sale notice"). In the pre-sale notice, the Bank advised the Branches, among other things, that it: (1) had repossessed the vehicle, (2) intended to apply for a repossession title 10 or more days after January 11, and (3) intended to sell the vehicle "by private sale" 15 or more days after January 11. The pre-sale notice further advised the Branches of the amount owed, the manner in which proceeds of the sale would be distributed, the possibility of a deficiency, and their rights to regain possession of the vehicle by paying the amounts owed in full prior to the sale.

2

Finally, the pre-sale notice informed the Branches of their right to have the Bank explain in writing how it calculated the amount owed. The notice included all the information required by section 400.9-614[1] and substantially tracked the form set forth therein and the pre-disposition form published by the Missouri division of finance. The Branches admit they received the pre-sale notice.

In February 2018, the Bank sold the vehicle at an auction conducted by a third party and open only to automobile dealers licensed in Missouri. The vehicle sold for less than the balance owed, and, in March 2018, the Bank sent the Branches a written explanation of the deficiency (the "post-sale explanation"). The post-sale explanation advised the vehicle had been sold, stated the Branches owed a deficiency of approximately $8,600, explained how the Bank calculated the deficiency, and stated the Bank "reserved the right to pursue legal action" if the deficiency was not paid. The post-sale explanation included all the information required under sections 400-9.616(a)(1) and 400.9-616(c) and followed the form published by the Missouri division of finance.

The Bank sent the post-sale explanation via certified mail to the Branches at their last known address. Postal records showed delivery of the post-sale explanation was unsuccessful and a notice of attempted delivery was left at the address. The Branches never claimed the post-sale explanation, and, after several weeks, it was returned to the Bank. The Bank took no further action to mail or deliver the post-sale explanation.

---

[1] All statutory citations are to RSMo 2016, unless otherwise noted.

In May 2019, the Bank filed a petition in the associate division of the circuit court, under chapter 517, seeking to recover the deficiency with interest. The circuit court held a bench trial in February 2020, after which it entered a judgment denying the Bank's petition with written findings of fact and conclusions of law. The circuit court found the Bank was not entitled to recover a deficiency for two independent reasons: (1) the Bank failed to provide "reasonable notification" of the sale of collateral and (2) the pre-sale notice failed to comply with sections 400.9-614(1)(A) and 400.9-613(1)(C), (E) in that it stated the vehicle would be sold at a private sale when the circuit court found the dealers-only auction constituted a public sale. The Bank appealed, and this Court granted transfer after an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

**Standard of Review**

The circuit court's judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Additionally, matters of statutory interpretation are reviewed *de novo*. *Holmes v. Steelman*, 624 S.W.3d 144, 149 (Mo. banc 2021). A lender's right to a deficiency judgment accrues only if there is strict compliance with statutory requirements. *State ex rel. Gen. Credit Acceptance Co., LLC v. Vincent*, 570 S.W.3d 42, 48 n.4 (Mo. banc 2019). Doubts regarding statutory compliance are resolved in the debtor's favor. *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 92 (Mo. App. 2008).

4

**Bank Sent Post-Sale Explanation**

The Bank asserts the circuit court erred in determining it failed to send "reasonable notification" of the sale of collateral because the Bank sent, and the Branches admit they received, a pre-sale notice of its intent to sell the vehicle and the Bank complied with section 400.9-616(b) when it sent the Branches the post-sale explanation by certified mail to an address reasonable under the circumstances.

The Bank's claim of error requires an examination of the circuit court's judgment. The circuit court ruled the Bank was not entitled to a deficiency judgment because it found (1) the Bank mailed "notices to [the Branches] by certified mail to their last known address and those letters were unclaimed"; (2) "there was no evidence that [the Branches] received any notice of sale"; and (3) the Bank's failure, thereafter, to make "additional efforts to locate or notify the [Branches]" was a failure to "give reasonable notification of the sale of collateral as mandated by § 400.9-504(3)," RSMo 2000. The circuit court's judgment included a bolded finding that "**where the creditor learns *prior to the sale* that the debtor did not receive the notice, it is no longer reasonable to assume that the debtor has been given the opportunity to protect her interests at the sale**." (Italics added). The circuit court found the Bank's failure to give, prior to the sale, notice of its intent to sell the vehicle precluded it from obtaining a deficiency judgment.

Review of the circuit court's findings of fact and conclusions of law show these conclusions were based on mistakes of fact and law. There is no evidence in the record that either the first or second notices of the Branches' defaults and rights to cure were undelivered or unclaimed. The record also shows the Bank sent via certified mail, and the

5

Branches *admit* they received, the pre-sale notice of the Bank's intent to sell the vehicle. The only evidence of unclaimed correspondence between the Bank and the Branches related to the post-sale explanation, which all parties agree was not delivered and was eventually returned to the Bank. The circuit court's finding that the Branches did not receive the Bank's pre-sale notice of its intent to sell the vehicle is rejected because it is not supported by any evidence in the record. *See Belleville v. Dir. of Revenue*, 825 S.W.2d 623, 624 (Mo. banc 1992).

Upon erroneously finding the Branches did not receive any pre-sale notice, the circuit court misstated the law when it determined the effect of the Bank's failure to send pre-sale notice. The circuit court found the Bank failed to provide "reasonable notification of the sale of collateral as mandated by § 400.9-504(3)," RSMo 2000, and "defined in section 400.1-201(26)." As noted, the Branches admit they received the Bank's pre-sale notice. And even if they had not, the statute the circuit court found mandated "reasonable notification" of the sale of collateral, section 400.9-504(3), RSMo 2000, was repealed in 2001.[2] The circuit court's factual findings and conclusions of law that the Bank was precluded from receiving a deficiency judgment because it failed to give pre-sale notice were erroneous.

This Court, however, will affirm if the circuit court reached the correct result for the wrong reason. In other words, the Court will affirm on any ground supporting the circuit

---

[2] The statute the circuit court stated defined "reasonable notification," section 400.1-201(26), was amended in 2017 to move the provisions governing when a person "notifies" or "gives" notice to section 400.1-202(d), RSMo Supp. 2017.

court's judgment, "regardless of the grounds on which the circuit court relied." *Stanley v. State*, 420 S.W.3d 532, 543 n.9 (Mo. banc 2014). In support of the judgment, the Branches claim the Bank failed to comply with the statutory requirements governing the post-sale explanation of deficiency. The Branches do not claim the form or substance of the post-sale explanation was deficient. They contend, instead, the Bank did not "send" the post-sale explanation as required by section 400.9-616(b)(1) because the explanation was sent by certified mail.

In a consumer-goods transaction, such as here, after the secured party disposes of collateral, section 400.9-616(b)(1) requires it to "[s]*end* an explanation to the debtor or consumer obligor, as applicable, after the disposition[.]" (Emphasis added). Section 400.9-102(a)(74) defines "'send,' in connection with a record or notification" as:

> (A) To deposit in the mail, deliver for transmission, or transmit by any other usual means of communication, with postage or cost of transmission provided for, addressed to any address reasonable under the circumstances; or

> (B) To cause the record or notification to be received within the time that it would have been received if properly sent under subparagraph (A)[.]

The Branches rely on the definition of send in subparagraph (A), arguing the language "to deposit in the mail" does not expressly authorize "certified mail," so the Bank had to comply strictly with subparagraph (B) of the statute, which required it present proof that it "cause[d] the record or notification to be received." In support of the proposition that subparagraph (A) does not include certified mail, the Branches cite *Leasing Associates, Inc. v. Slaughter & Son, Inc.*, 450 F.2d 174, 179 n.5 (8th Cir. 1972). In that case, the Eighth Circuit noted the "elements required by the [UCC] to prove 'sending' a notice are virtually

7

identical to those required . . . to support a presumption of receipt." *Id.* From that statement, the Branches conclude subparagraph (A) is a codification of the "mailbox rule" that provides a presumption of receipt when a letter is sent by regular mail but that does not apply to certified mail because certified mail creates a record of receipt. The Branches fail to include, however, that the Eighth Circuit noted the definition of "send" in subparagraph (A) differs because it does not require proof of receipt. "[I]t is sufficient to prove 'sending' the notice without proof of its receipt." *Id.* As a result, *Leasing Associates* does not support the Branches' argument that subparagraph (A) does not include certified mail.

Importantly, the Branches cite no other authority for the proposition that certified mail fails to comply with the requirements of subparagraph (A). Neither has this Court found any such authority. To the contrary, the court of appeals and other jurisdictions have found, or assumed without analysis, certified mail complies with the requirements of subparagraph (A). *See, e.g.*, *Springfield Chrysler-Plymouth, Inc. v. Harmon*, 858 S.W.2d 240, 244 (Mo. App. 1993) (characterizing notices sent via certified mail as "properly sent"); *Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 903 (Tenn. 2007) ("Auto Credit complied with the provisions of Article 9 when it sent the notification to [debtor] via certified mail, despite the fact [debtor] never received the notification."); *Coy v. Ford Motor Credit Co.*, 618 A.2d 1024, 1027 (Pa. Super. Ct. 1993) (holding notice sent via certified mail complied with the UCC); *see also* White, Summers, & Hillman, Uniform Commercial Code § 34:33 (6th ed. 2022) ("Of course, creditors can use certified mail so that proof of receipt exists."). When the Bank sent the post-sale explanation via certified

8

mail, it complied with subparagraph (A)'s requirement "to deposit in the mail," so there is no merit to the Branches' claim the Bank was required to prove the Branches actually received the post-sale explanation under subparagraph (B).

In further support of the judgment, the Branches claim the Bank did not strictly comply with section 400.9-616 because, after the certified mail was returned as unclaimed, it was required to make further efforts to provide them with the post-sale explanation. The legal basis of this claim is based on their characterization of the post-sale explanation as a "post-sale *notice* of explanation." That characterization likely stems from their use of the definition of "send" in 400.9-102(a)(74), which applies "in connection with a record or notification." Use of the terms "notice" and "notification" implicates section 400.1-202(d), RSMo Supp. 2017, which provides: "A person 'notifies' or 'gives' a notice or notification to another person by taking such steps as may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it." The Branches, therefore, assert the Bank not only had to "send" the explanation but also take "such steps as may be reasonably required to inform" them of it.

That would be correct under section 400.9-611 for the pre-sale notice. Comment 6 to section 400.9-611 states the UCC "leaves to judicial resolution" the question whether the requirement of "reasonable notification," stemming from section 400.9-611(b),[3]

---

[3] For pre-sale notices of dispositions, section 400.9-611(b) requires a secured party to send a debtor a "reasonable authenticated notification of disposition," that is reasonable "as to the manner in which it is sent, its timeliness . . . , and its content." Section 400.9-611 cmt. 2.

9

requires a "second try" when a secured party learns the debtor did not receive the pre-sale notice.

In contrast, the UCC did not require a post-sale explanation until section 400.9-616 was enacted in 2001, and that section never uses the terms "notify," "notice," "notification," or any other variation of the word to describe the post-sale explanation. Neither does section 400.9-616 require a secured party to send a "reasonable notification" of deficiency or to attempt a "second try" at providing reasonable notification in some circumstances in any way similar to the provision for pre-sale notice in section 400.9-611. The Branches cite no authority, and this Court has found none, applying the "reasonable notification" and "second-try" requirements related to pre-sale notices under section 400.9-611 to post-sale explanations under section 400.9-616.

Rather, section 400.9-616(a)(1) provides the post-sale explanation is a "writing." The definition of "send" set out in the general provisions of the UCC applies "in connection with a *writing*, record, or notice," indicating writings should not be construed synonymously with notices. Section 400.1-201(36), RSMo Supp. 2017 (emphasis added).[4] Because it is erroneous to call the post-sale explanation a "notice," section 400.1-202(d)'s provisions – stating a party "'*notifies*' or 'gives' a *notice* or *notification* by taking such

---

[4] The general definition differs slightly from section 400.9-102(a)(74)(A) in that it requires a writing to be "properly addressed and, in the case of an instrument, to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances[.]" Section 400.1-201(36). By contrast, section 400.9-102(a)(74)(A) requires only that it be "addressed to any address reasonable under the circumstances." The Bank complied with both definitions when it mailed the post-sale explanation to the Branches' last known address, which was listed in the parties' agreement.

steps as may be reasonably required" – do not apply. (Emphasis added). The Bank properly sent the writing constituting the post-sale explanation.

Finally, the Branches claim prior decisions compel this Court to hold the Bank was required to take additional steps to provide them with notice after the post-sale explanation was returned unclaimed. The cases on which the Branches rely, however, were decided in the context of pre-sale notices or notices sent to advise the debtor of a right to redeem. *See Schlereth v. Hardy*, 280 S.W.3d 47, 48 (Mo. banc 2009) (requiring additional steps when notice of right to redeem real property after a tax sale was returned unclaimed); *Com. Bank of St. Louis, N.A. v. Dooling*, 875 S.W.2d 943, 947 (Mo. App. 1994) (requiring further attempts to provide pre-sale notice when the secured party knew the debtor had not received pre-sale notice). Here, the post-sale explanation is not meant to notify the Branches of rights that could expire if not exercised, such as the right to redeem after a tax sale. The Court does not find similar interests are at stake after the sale of collateral in a consumer-goods transaction.

The Branches also cite *Missouri Credit Union v. Diaz*, 545 S.W.3d 856, 862-63 (Mo. App. 2018), for the proposition that "the strict requirements necessary to obtain a deficiency judgment apply equally to post-sale notices." Granting that proposition, *Missouri Credit Union* says nothing about whether a secured party who sends a post-sale explanation must make further attempts to send its post-sale explanation when the explanation is returned unclaimed. The court of appeals did not hold in *Missouri Credit Union* that a secured party fails to comply with the requirements of a post-sale explanation when it properly sends an explanation but the explanation is later returned unclaimed. The

11

Court agrees secured parties must strictly comply with section 400.9-616's requirements, and it finds the Bank met those requirements.

Section 400.9-616(b)(1) required only that the Bank "send" its post-sale explanation to the Branches. As previously established, the Bank did so, whichever definition of "send" applies, when it mailed the explanation to the Branches at their last known address listed in the parties' agreement. The circuit court's findings that the Branches did not receive the pre-sale notice were not supported by substantial evidence, and the circuit court erroneously declared and applied the law when it applied section 400.9-504(3), RSMo 2000. Reversal on this point, however, does not dispose of the appeal because the circuit court articulated a second and independent basis for its judgment that the Bank challenges in its second claim of error.

**Private Sale**

The Bank asserts the circuit court erred in ruling the Bank did not strictly comply with sections 400.9-614(1)(A) and 400.9-613(1)(C), (E) in that the pre-sale notice stated the vehicle would be sold at a private sale but the dealers-only auction at which it was sold was a public sale.

In consumer-goods transactions, section 400.9-614(1)(A) requires a notification of disposition to provide the "information specified in section 400.9-613(1)[.]" As relevant here, subdivision (C) of section 400.9-613(1) required the pre-sale notification of disposition to state "the method of intended disposition," and subdivision (E) of the same section required it to state "the time and place of a public disposition or the time after which any other disposition is to be made[.]" The Bank's pre-sale notice stated the vehicle would

12

be "sold by private sale at some fifteen (15) or more days following the date of this letter." Consequently, if the auction at which the vehicle was sold was not a public sale, the Bank complied with the statute because its pre-sale notice stated the method of intended disposition and "the time after which" the disposition would be made. *Id.* If, however, the auction was a public sale, the Bank failed to comply with the statute because its pre-sale notice failed to state the vehicle would be sold at a public sale and failed to state the "time and place" of the public sale. *Id.*

The circuit court found the vehicle was sold "at an auction in which only certain dealers who qualified could participate." There is no challenge to the circuit court's factual findings in this regard. The only question is whether the circuit court correctly declared or applied the law in concluding that such an auction is a public sale.

The UCC does not define "public sale" or "public disposition," but comment 7 to section 400.9-610 provides guidance. Comment 7 states a public sale "is one at which the price is determined after the public has had a meaningful opportunity for competitive bidding." The same comment states: "Meaningful opportunity is meant to imply that some form of advertisement or public notice must precede the sale (or other disposition) and that the public must have access to the sale (disposition)." *Id.* (internal quotation omitted). Because "only certain dealers who qualified" could participate in the auction, neither the public nor the Branches had a "meaningful opportunity" for competitive bidding. *Id.*; *see also* section 400.9-614 (including in the safe-harbor form for notification of disposition at a public sale the statement that the debtor "may attend the sale and bring bidders"). As a result, the auction was not a public sale, and the Bank's pre-sale notice stating the vehicle

13

would be "sold by private sale" and stating "the time after which" the vehicle would be sold complied with sections 400.9-613(1)(C), (E) and consequently, section 400.9-614(1)(A).

Nonetheless, the Branches claim the auction was a public sale because it is conceivable a person who is not a dealer licensed in Missouri could have participated in the auction using a qualified dealer as an agent or intermediary. Even if that were true, the only members of the general public permitted to enter the auction and bid were dealers licensed in Missouri. The circuit court erroneously applied the law when it held the dealers-only auction at which the vehicle was sold was a public sale.[5]

**Conclusion**

The circuit court's finding that the Branches did not receive any pre-sale notice of the disposition is not supported by substantial evidence. Further, the circuit court misstated the law when it required the Bank to comply with section 400.9-504(3), RSMo 2000, and provide the Branches with "reasonable notification" of the sale of collateral. The Branches admit they received the pre-sale notice of the sale of collateral required by section 400.9-611(b). The Bank complied with the statutory requirements governing its post-sale explanation of deficiency. The circuit court also misstated the law when it found the Bank's pre-sale notice stating the vehicle would be sold by private sale failed to comply with sections 400.9-613(1)(C), (E) in that the circuit court erroneously determined the

---

[5] The Bank asserted a third claim of error, but it is unnecessary for the Court to reach the third claim because the Court has granted the Bank all the relief it requested. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 389 (Mo. banc 1989).

14

dealers-only auction at which the vehicle was sold was a public sale. The circuit court's judgment is reversed, and the cause is remanded.

_____
PATRICIA BRECKENRIDGE, JUDGE

Wilson, C.J., Powell, Fischer,
Ransom, and Draper, JJ., and
Goodman, Sp.J., concur.
Russell, J., not participating.